# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al*., | ) | Case No. 1:10-cv-2007 (EGS) |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **MOTION TO INTERVENE** |
| | ) | |
| | ) | |
| LISA P. JACKSON, *et al*., | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| NATIONAL SHOOTING SPORTS | ) | |
| FOUNDATION, INC. | ) | |
| Flintlock Ridge Office Center | ) | |
| 11 Mile Hill Road | ) | |
| Newtown, CT 06470-2359 | ) | |
| | ) | |
| Proposed Defendant-Intervenor. | **)** | |

National Shooting Sports Foundation, Inc. ("NSSF"), by and through the undersigned counsel, hereby respectfully seeks an order from this Court allowing it to intervene of right pursuant to Fed. R.Civ. P. 24(a)(2), or alternatively, to intervene permissively in this matter under Fed. R. Civ. P. 24(b)(1)(B). Intervention is sought so that the movant may appear in support of the named Defendants and file responsive pleadings to Plaintiffs' Complaint.

Plaintiffs oppose this Motion. Counsel for NSSF were unable to confer with Defendants, as counsel for the government has yet to file an appearance.

Dated: November 29, 2010

Respectfully submitted,

/s/ Roger R. Martella, Jr.
Roger R. Martella, Jr. (Bar No. 976771)
Christopher L. Bell (Bar No. 412857)
Ragu-Jara Gregg (Bar No. 495645)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005
(202) 736-8000
(202) 736-8711 (fax)

*Attorneys for Proposed Defendant-Intervenors*
*NATIONAL SHOOTING SPORTS FOUNDATION, INC.*

*Of Counsel*
Lawrence G. Keane
General Counsel
National Shooting Sports Foundation
11 Mile Hill Road
Newtown, CT 06470-2359
(203) 426-1320

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL )    Case No. 1:10-cv-2007 (EGS)
DIVERSITY, *et al*., )
 )
Plaintiffs, )
 )    **MEMORANDUM OF POINTS**
v. )    **AND AUTHORITIES IN SUPPORT**
 )    **OF MOTION TO INTERVENE**
 )    **OF NATIONAL SHOOTING**
 )    **SPORTS FOUNDATION, INC.**
LISA P. JACKSON, *et al*., )
 )
Defendants. )
 )

## INTRODUCTION

The National Shooting Sports Foundation, Inc. ("NSSF") moves to intervene in this

action filed by the Center for Biological Diversity, Public Employees for Environmental

Responsibility and Project Gutpile (collectively "Plaintiffs") in which they challenge the United

States Environmental Protection Agency's ("EPA's") denial of Plaintiffs' petition demanding

that EPA ban domestically manufactured traditional ammunition containing lead shot and bullets

under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §2601 et seq., even though

Congress expressly excluded ammunition from the reach of TSCA.  *See* Center for Biological

Diversity, *et al*., Complaint for Declaratory and Injunctive Relief ("Complaint") (Exhibit 1).

NSSF, which speaks for the nation's leading ammunition manufacturers, seeks to intervene to

defend EPA's correct conclusion that the Agency does not have the jurisdiction to regulate

traditional ammunition (including the shot and bullets that make up ammunition) under TSCA.

NSSF is the trade association for the firearms and ammunition industry, with a membership of more than 6,000 manufacturers, distributors, and retailers of firearms, ammunition, and hunting-related goods and services, as well sporting organizations, public and private shooting ranges, gun clubs, and individual hunters and sports shooters.  Plaintiffs' demand that EPA use TSCA to ban domestically manufactured traditional ammunition threatens to shut down the domestic ammunition manufacturing industry and increase costs to the hunting and sports shooting public, while allowing foreign manufacturers to import that very same ammunition into the United States without domestic competition or TSCA regulation.

A. <u>Summary of Case</u>

On August 3, 2010, Plaintiffs petitioned EPA under Section 21 of TSCA asking EPA to prohibit the manufacture, processing, and distribution in commerce of lead for shot, bullets, and fishing sinkers.  75 Fed. Reg. 58,377 (Sept. 24, 2010).  On August 27, 2010, EPA properly denied the portion of the petition seeking to ban lead in ammunition because the Agency does not have the legal authority to regulate ammunition under TSCA.  *Id.* at 58,377.  Plaintiffs filed their challenge to EPA's denial of their petition regarding bullets and shot on November 23, 2010, 88 days after EPA's final decision.

EPA correctly concluded that the definition of "chemical substance" in TSCA section 3(2)(B)(v) excludes firearms, shells and cartridges from the Agency's TSCA jurisdiction.  The Agency properly explained:

> This plain reading of the statute is consistent with EPA's longstanding interpretation of the six TSCA exclusions at TSCA section 3(2)(B).
>
> The statutory definition of "chemical substance" excludes "any article the sale of which is subject to the tax imposed by section 4181 of the Internal Revenue Code of 1986 (26 U.S.C.A. 4181) (determined without regard to any exemptions from such tax provided by section 4182 or 4221 or any other provision of such code)." 15 U.S.C. 2602(2)(B)(v). Section 4181 imposes a tax on firearms, shells and cartridges. 26 U.S.C. 4181. Bullets and shot, and any lead within them, are

> contained in shells and cartridges and are therefore excluded from the chemical
> substance definition. In addition, EPA's plain reading of TSCA is consistent with
> EPA's long-standing interpretation of TSCA's definition of "chemical substance"
> and with the purpose of the exemption.

75 Fed. Reg. 58,377-78 (Sept. 24, 2010).  There is no debate that "shells and cartridges" are

subject to the firearms and ammunition excise tax ("FAET") imposed by section 4181 of the

Internal Revenue Code, which is collected by the Alcohol and Tobacco Tax and Trade Bureau

("TTB").[1]  Thus, "shells and cartridges" are not "chemical substances" subject to EPA's

jurisdiction under TSCA.

Plaintiffs concede that "shells and cartridges" are exempt from TSCA. Complaint ¶ 25.

However, they assert that EPA has TSCA jurisdiction over the lead shot and bullets because

additional FAET is not collected on the shot and bullets that are components of the shells and

cartridges. Complaint ¶ 28.  That is, the tax code does not impose a "double FAET," first on the

components of shells and cartridges (i.e., shot and bullets), and then again on the final

ammunition containing the components.  Plaintiffs thus seek to effectively read out of the statute

Congress's clear direction that TSCA was not intended to regulate ammunition, since

ammunition is simply the sum total of its components (i.e., there would not be any shells and

cartridges for the IRS to tax without bullets or shot), and require EPA to use TSCA to ban

approximately 95% of the domestically manufactured ammunition that is produced today.

B.   Interests of Defendant-Intervenor NSSF

NSSF is the trade association for the firearms and ammunition industry, and its members

will be directly impacted by the outcome of this litigation.  NSSF's mission is to promote,

protect, and preserve hunting and the shooting sports, and support America's traditional hunting

heritage and firearms freedoms.  Formed in 1961, NSSF is a Connecticut non-profit tax-exempt

[1] The TTB was created by the Homeland Security Act of 2002, and is part of the U.S. Department of the Treasury.

corporation with a membership of more than 6,000 federally-licensed firearms manufacturers, distributors, and retailers; companies manufacturing, distributing, and selling shooting and hunting-related goods and services; sportsmen's organizations; public and private shooting ranges; gun clubs; publishers; and recreational target shooters and hunters.  Keane Decl. ¶ 3 (Exhibit 2).  NSSF members and the firearms and ammunition industry on whole provide approximately 185,000 jobs in the United States and have an overall annual economic impact of more than $27.5 billion.  *Id.* ¶ 4.  NSSF's members manufacture, distribute, sell, and use ammunition.  Approximately 95% of the domestically manufactured ammunition is traditional ammunition made with lead bullets or shot, and over 90% of that is manufactured by NSSF members.  *Id.* ¶ 5.  The traditional ammunition (i.e., cartridges and shells) that consumers purchase consists of the projectile (i.e., lead shot or bullets), propellant, and a primer, all contained in a casing.  *Id.*  More than 50 million target shooters and hunters across the United States purchase and use traditional ammunition.  *Id.* at ¶ 4.

Thus, NSSF has significant economic, legal, and policy interests in this lawsuit and defending EPA's decision, as a ruling in Plaintiffs' favor could result in the manufacture and distribution of ammunition being regulated under TSCA, and potentially ban the domestic manufacture of traditional ammunition.  In the face of such a result, NSSF's members would have to significantly change, if not entirely abandon, their manufacturing and business practices. *Id.* ¶ 6.

Ammunition is made in very high volume and high speed precision processes using specialized mass production equipment and manufacturing know-how honed by decades of experience.  *Id.*  These facilities produce millions of cartridges a day.  *Id.*  The shot and bullets used in traditional ammunition cannot simply be replaced with alternative materials in the

existing mass production processes.  Domestic ammunition manufacturers would be forced to either retool their entire manufacturing processes at a significant cost or shut down.  At the same time, domestic manufacturers would face unfair competition from foreign manufacturers whose import of shells and cartridges containing lead shot or bullets could not be affected by EPA's action.  *Id.*[2]

Banning the manufacture of traditional ammunition will increase the cost of ammunition and create burdens that will cascade throughout the entire hunting and shooting sports community represented by NSSF, including retailers, shooting ranges, and the sportsmen who use ammunition.  *Id.*  These costs will also be borne by Federal and State law enforcement, as well the military.  *Id.*  Increasing the cost of ammunition will also decrease demand, which has additional follow-on consequences.  For example, decreased ammunition purchases will mean a decrease in the collection of the FAET (11% on taxable ammunition sales), which is one of the primary sources of funding for wildlife conservation (all of the FAET goes to the U.S. Fish and Wildlife Service, which then distributes the funds to the States for wildlife and sport fish restoration).  *Id.*  These burdens would injure many – if not all – of NSSF's members.  *Id.*  NSSF therefore seeks to intervene in this case to support EPA's decision and oppose Plaintiffs' attempt to force EPA to use TSCA to ban the domestic manufacture of traditional ammunition.  For the reasons stated below, this Court should grant NSSF's motion for leave to intervene.[3]

---

[2] Imported ammunition comes into the United States in the form of finished shells and cartridges.  Therefore, even under Plaintiffs' incorrect view of the law, imported ammunition containing lead components could not be regulated by EPA under TSCA.

[3] NSSF meets Article III standing requirements because its members would be subject to the TSCA provisions in question in this case if Plaintiffs prevail, and the individual participation of the members in the case is not required.  *See Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (finding trade association had standing in challenge of EPA regulation where some of its members were subject to challenged regulation).  The interests alleged as grounds for intervention are sufficient to demonstrate that NSSF satisfies the test of constitutional standing and associational standing on behalf of their members.  *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992).  As discussed above and in the Keane Declaration, NSSF's members face a potential injury that would

**ARGUMENT**

I.   **NSSF Is Entitled to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)**

Federal Rule of Civil Procedure 24(a) states in relevant part:

> On timely motion, the court must permit anyone to intervene who . . . (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

The D.C. Circuit applies a four part test for determining if an applicant has a right to intervene under Rule 24(a):  (1) the motion must be timely; (2) the applicant must assert a "significantly protectable" interest relating to property or a transaction that is the subject matter of litigation; (3) the applicant must be situated so that disposition of action may as a practical matter impair or impede the interest; and (4) the applicant's interest must be inadequately represented by the parties.  *See, Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).  NSSF satisfies each prong of this test and therefore should be permitted to intervene as of right.[4]

A.   This Motion to Intervene is timely.

As "[t]imeliness is to be determined by looking at all of the circumstances relevant to the case and the motion," there can be no doubt that NSSF's motion is timely.  *See Hardin v.*

---

provide them with their own right to sue, that injury is related to NSSF's organizational purpose, and the nature of the claim and the relief requested is not such that participation of NSSF's members in the lawsuit is required. Nonetheless, the D.C. Circuit has indicated that Article III standing should not be required of any party seeking to intervene as a defendant.  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003), *cert. denied*, 542 U.S. 915 (2004) ("Requiring standing of someone who seeks to intervene as a defendant ... runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction") (citations omitted).

[4] Because this Motion to Intervene is being filed so early in the litigation, the time in which to file an answer or dispositive motion has not yet run, notwithstanding the Federal Rule of Civil Procedure 24(c) requirement that an applicant for intervention accompany its motion with "an original of the pleading setting forth the claim or defense for which intervention is sought[.]" NSSF understands that, at the appropriate time, it will be required to file an answer or other response to the Complaint.  Consequently, NSSF has included in the attached Proposed Order a provision stating that the requirement to plead or file a motion in response to the Complaint is deferred until the date that such filing by EPA is due.

*Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (citation omitted).  Plaintiffs filed their

Complaint on November 23, 2010 and NSSF is filing this Motion to Intervene less than a week

later.  This case is still in its earliest phases.  As of the date of filing of this Motion to Intervene,

EPA has not yet filed an answer, neither party has filed any procedural or dispositive motions,

and no schedules or substantive orders have been issued by this Court.  Consequently, granting

NSSF's timely Motion will not cause any delays.  Furthermore, because NSSF agrees to comply

with any forthcoming scheduling orders, and will endeavor to avoid the duplication of issues

with the other parties, there is no danger of prejudice to Plaintiffs or to EPA.  In short, under any

test of timeliness, this Motion satisfies this provision of Rule 24 (a)(2).

      B.    <u>NSSF has a protectable interest in the policy and economic impacts that would</u>
<u>result from the potential ban under TSCA of the domestic manufacture of ammunition that is the</u>
<u>subject of Plaintiffs' suit</u>.

      Intervention is warranted because NSSF's members will be directly affected if Plaintiffs

prevail in this litigation.  Plaintiffs seek to establish through this litigation that EPA has the

authority and obligation to regulate traditional ammunition under TSCA, despite the clear

statutory language to the contrary.  When a third-party challenges an agency final action or other

regulatory direction, the members of the regulated industry that are directly affected by that

government action have a significant, protectable interest that supports intervention.  *See e.g.*,

*Fund for Animals*, 322 F.3d at 735; *NRDC v. EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (holding

that pesticide manufacturers subject to regulation under challenge had a legally protected

interest); *Military Toxins Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (holding that

companies that produce military munitions and operate military firing ranges had standing to

challenge EPA's Military Munitions Rule); *Conservation Law Found. of New England v.*

*Mosbacher*, 966 F.2d 39, 41-44 (1st Cir. 1992) (holding that commercial fishermen impacted by regulatory plan to address overfishing had a recognizable interest in the timetable for implementing that plan).

Further, Plaintiffs' claims will affect NSSF because NSSF has a direct interest in the economic vitality and legal rights of its members, which include the leading domestic manufacturers of the traditional ammunition that is at issue in this suit, as well as thousands of distributors, firearms retailers, shooting ranges, sportsmen's organizations (including hunters and target shooters) that distribute, sell, and use that ammunition. Keane Decl. ¶ 3. Plaintiffs are seeking to have this Court "order the EPA to take the petitioned action," which is to ban the domestic manufacture of traditional ammunition. *See* Complaint, Request for Relief ¶ 1. Domestic manufacturers would be required – at great cost – to re-design their products, retool or purchase new manufacturing equipment and significantly change their manufacturing processes, as it is not possible to simply replace lead with alternative material in the existing mass production manufacturing processes. Keane Decl. ¶ 6. This process would include evaluating the efficacy, consumer acceptance, and environmental, health and safety impacts of substitutes in order to determine if a switch to exclusively lead-free ammunition is even feasible. *Id.*

Assuming that an across-the-board switch to some form of alternative ammunition in mass production processes is feasible (which has not been demonstrated), given the razor-thin operating margins and the current economic climate that these manufacturers face, manufacturers might not be able to obtain the capital needed to accomplish such a radical re-shaping of the ammunition industry. *Id.* All of these technical and economic factors could create ammunition shortages. In addition, any alternative material will be more costly, further driving up manufacturing costs and costs to the American public. *Id.*

The ban on domestic manufacturing of traditional ammunition sought by Plaintiffs' will benefit foreign ammunition manufacturers at the expense of domestic companies and U.S. jobs. Even Plaintiffs agree that fully assembled ammunition (i.e., shells and cartridges) is not subject to regulation under TSCA.  Complaint ¶ 25.  Therefore, if Plaintiffs prevail, foreign manufacturers could continue to sell traditional ammunition into the United States market, while domestic manufacturers would be prohibited from producing and selling that same ammunition. Thus, domestic manufacturers would face unfair foreign competition, American jobs would be lost, and the traditional ammunition about which Plaintiffs complain would continue to be sold in the United States.  Keane Decl. ¶ 6.

The relief sought by Plaintiffs will harm not only domestic ammunition manufacturers that belong to NSSF, but also NSSF members who distribute, sell, and use that ammunition.  *Id.* If Plaintiffs are successful in their efforts, the prohibition on domestically manufactured traditional ammunition will increase the cost of ammunition for all users, including Federal and State law enforcement and the military.  Id. ¶ 5.  Thus, a prohibition on the domestic manufacture of lead-containing ammunition would create uncertainty in the marketplace*, with* effects (including shortages, price increases, and reduced FAET revenues used for wildlife conservation) that would cascade through the supply chain, significantly impacting NSSF members who distribute, sell, and use ammunition.  *Id.* ¶ 6.

Thus, NSSF, on behalf of its membership, has direct legal and economic interests in the subjects of Plaintiffs' suit that can be protected by intervention as of right in this action.

C.    The disposition of this case may impair or impede NSSF's ability to protect its interests and the interests of its members.

To show impairment of interests for the purposes of Rule 24(a)(2), a proposed intervenor

need show only that the disposition of an action "*may* as a practical matter," impede the intervenor's ability to protect its interests in the subject of the action.  Fed. R. Civ. P. 24(a)(2) (emphasis added).[5]  Where the relief sought by the Plaintiffs would have direct, immediate, and harmful impact on a third party's interests, that adverse impact is sufficient to satisfy Rule 24(a)(2).  *Fund for Animals,* 322 F.3d at 735; *Sagebrush Rebellion, Inc. v. Hodel,* 790 F.2d 760 (9th Cir. 1986).  Further, an entity has sufficient interests to intervene where the proceeding has the potential to subject the movant to governmental regulation or significantly change how the movant does business.  *See, e.g., Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *Fund for Animals*, 322 F.3d at 735; *Military Toxins Project* 146 F.3d at 954.

Plaintiffs seek to establish in this case that EPA has the legal authority and obligation to regulate ammunition under TSCA.  The disposition of this claim in favor of the Plaintiffs will have an immediate and significant adverse impact on the legal interests of NSSF's members.  Further, as discussed above, Plaintiffs' action, if successful, would harm NSSF's members throughout the hunting and shooting sports industry by changing product content, design, and manufacturing processes, increasing manufacturing costs, benefiting foreign manufacturers, and increasing the cost of ammunition.  Intervention of right is warranted where there is even a *possibility* that the remedies sought by Plaintiffs will harm the interests of NSSF's members, and thereby NSSF itself.  Given the certain and significant impacts of Plaintiffs' claims on NSSF's members, intervention of right is warranted.

D.     NSSF's interests may not be adequately represented by the Government and will not be adequately represented by Plaintiffs.

---

[5] Fed. R. Civ. P. 24 advisory committee's notes to 1966 Amend. ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene ….").

The requirement under Federal Rule of Civil Procedure 24(a)(2) to show inadequate representation "is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted). "A showing that existing representation is inadequate 'is not onerous.'" *Hardin v. Jackson*, 600 F. Supp. 2d at 16 (citing *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986)). Further, the D.C. Circuit has frequently found "inadequacy of governmental representation" when the government has no financial stake in the outcome of the suit, whereas a private intervenor does. *See e.g., Dimond v. Dist. of Columbia*, 792 F.2d at 192; *Fund for Animals*, 322 F.3d at 736; *NRDC v. Costle*, 561 F.2d 904, 912, n.41 (D.C. Cir. 1977); *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (nothing that a government agency was "required to represent a broader view than the more narrow, parochial interests of" the intervenors); *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *County of Fresno v. Andrus*, 622 F.2d 436, 438-39 (9th Cir. 1980); *NRDC v. U.S. Nuclear Regulatory Comm'n*, 578 F.2d 1341, 1345-46 (10th Cir. 1978).

NSSF's interests here include protecting the legal rights and economic interests of its members by supporting EPA's decision that it does not have the legal authority or obligation under TSCA to regulate ammunition. NSSF's interests are directly opposed to those of Plaintiffs – hence Plaintiffs will not represent the NSSF's interests. Nor can EPA adequately represent NSSF's interests. As a government agency, EPA is focused on a broad "representation of the general public interest," not the "narrower interest" of certain businesses. *Dimond*, 792 F.2d at 192-93. In contrast to EPA, NSSF has a specific interest in protecting its members' ability to pursue their legitimate business interests in compliance with applicable laws, but without being

wrongly burdened by incorrect interpretations of TSCA or being subjected to unfair foreign competition.  While EPA is charged with the correct interpretation and implementation of TSCA, the Agency is not in a position to fully understand the impact of Plaintiffs' claims on the ammunition market specifically and the sport shooting and hunting community generally, or to advocate on behalf of the interests of NSSF's members.

Even if NSSF's interests and EPA's interests were more closely aligned, "that [would] not necessarily mean that adequacy of representation is ensured." *NRDC v. Costle*, 561 F.2d at 912.  Precisely because NSSF's interests are "more narrow and focused than EPA's," NSSF's participation is "likely to serve as a vigorous and helpful supplement to EPA's defense." *Id.* Accordingly, NSSF should be allowed to intervene as of right to fully and fairly represent the legitimate interests of its members in this litigation.

## II. In the Alternative, NSSF Should Be Granted Leave for Permissive Intervention Under Federal Rule of Civil Procedure 24(b)

Federal Rule of Civil Procedure 24 contemplates two forms of intervention – intervention of right and permissive intervention – and a court may grant an intervenor's motion on either basis.  *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. AFL-CIO, Local 283  v. Scofield*, 382 U.S. 205, 217 n.10 (1965).  Regarding permissive intervention, Rule 24(b) provides "on timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."

As demonstrated above, NSSF's Motion to Intervene is timely, will not cause undue delay, and will not prejudice Plaintiffs or EPA.  Moreover, as discussed above, NSSF possesses legally protectable interests in its members' economic interests and legal rights.  The potential for harm to those interests from Plaintiffs' suit provides an independent basis for jurisdiction, particularly given the minimal showing required by Federal Rule of Civil Procedure 24(b).  Also,

NSSF's members' economic and legal interests are directly at issue in this suit, and thus NSSF's own interests are at issue.

NSSF is asserting a concrete interest in whether TSCA can be used to regulate the manufacture, distribution and use of ammunition.  NSSF supports EPA's decision that the Agency does not have the authority under TSCA to regulate ammunition and will be offering defenses that overlap with the common questions of fact and law that will be raised by the Plaintiffs and EPA.  Therefore, the requirements for permissive intervention are fully satisfied, and because intervention would contribute to the just and equitable adjudication of the legal questions presented, it should be permitted.

## CONCLUSION

NSSF respectfully requests leave to intervene of right in this matter, pursuant to Federal Rule of Civil Procedure 24(a), and to file its own responsive pleading in support of EPA on or before the date on which the Government is required to file a responsive pleading.  In the alternative, NSSF respectfully requests leave for permissive intervention, pursuant to Rule 24(b), and to file its own responsive pleading in support of EPA on or before the date on which the Government is required to file its responsive pleading.

Dated: November 29, 2010                    Respectfully submitted,

                                            /s/ Roger R. Martella, Jr._____
                                            Roger R. Martella, Jr. (Bar No. 976771)
                                            Christopher L. Bell (Bar No. 412857)
                                            Ragu-Jara Gregg (Bar No. 495645)
                                            SIDLEY AUSTIN LLP
                                            1501 K Street, N.W.
                                            Washington, D.C. 20005
                                            (202) 736-8000
                                            (202) 736-8711 (fax)

*Attorneys for Proposed Defendant-*
*Intervenors*
*NATIONAL SHOOTING SPORTS*
*FOUNDATION, INC.*


*Of Counsel*
Lawrence G. Keane
General Counsel
National Shooting Sports Foundation
11 Mile Hill Road
Newtown, CT 06470-2359
(203) 426-1320

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 29, 2010, I caused true and correct copies of the

foregoing Motion to Intervene of National Shooting Sports Foundation, Memorandum of

Points and Authorities in Support of Motion to Intervene of National Shooting Sports

Foundation, and the Proposed Order to be served by U.S. Mail, first class postage prepaid:

| | |
|---|---|
| Lisa P. Jackson, Administrator<br>U.S. Environmental Protection Agency<br>Ariel Rios Building (AR), 1101A<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20004 | William J. Snape, III<br>Center For Biological Diversity<br>5268 Watson Street, NW<br>Washington, DC 20016 |
| U.S. Environmental Protection Agency<br>Correspondence Control Unit<br>Office of General Counsel (2311)<br>1200 Pennsylvania Avenue, NW<br>Washington, DC 20460<br>Eric H. Holder, Jr.,<br>Attorney General<br>U. S. Department of Justice<br>950 Pennsylvania Avenue, NW<br>Washington, DC 20530-0001 | Jaclyn Lopez<br>Adam Keats<br>Center For Biological Diversity<br>351 California St., Suite 600<br>San Francisco, CA 94104 |

/s/ Ragu-Jara Gregg
Ragu-Jara Gregg (Bar No. 495645)
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005