## UNITED STATES DISTRICT COURT

## DISTRICT OF COLUMBIA

CENTER FOR BIOLOGICAL DIVERSITY,  ) Case No.: 10-CV-02007 (EGS)
PUBLIC EMPLOYEES FOR ENVIRONMENTAL )
RESPONSIBILITY, and PROJECT GUTPILE,  )
                                     )
       Plaintiffs,  )
                                     )
   vs.  ) **OPPOSITION TO MOTION**
                                     ) **TO INTERVENE**
                                     )
LISA P. JACKSON and ENVIRONMENTAL  )
PROTECTION AGENCY,  )
                                     )
       Defendants  )
                                     )
 )
 )
 )
 )
 )
 )
 )
 )

**CENTER FOR BIOLOGICAL DIVERSITY, PUBLIC EMPLOYEES FOR ENVIRONMENTAL RESPONSIBILITY, AND PROJECT GUTPILE'S MEMORANDUM IN OPPOSITION TO NATIONAL SHOOTING SPORTS FOUNDATION'S MOTION TO INTERVENE AS DEFENDANTS**

## I.     INTRODUCTION

Plaintiffs Center for Biological Diversity, Public Employees for Environmental

Responsibility, and Project Gutpile ("Plaintiffs") oppose intervention by the National

Shooting Sports Foundation ("NSSF"), both as of right and permissively.  NSSF seeks to

intervene in this action to defend the Environmental Protection Agency's ("EPA") denial

of the Plaintiffs' petition to regulate lead shot, bullets, and fishing sinkers, and more

specifically, the EPA's conclusion that it does not have the jurisdiction to regulate lead

shot and bullets under the Toxic Substances Control Act ("TSCA"). Mot. to Intervene at

1.  Notably, NSSF does not contest the underlying issue presently before the Court,

Opposition to Intervention               1

whether lead shot, bullets, and fishing sinkers present an unreasonable risk of injury to health or the environment.[1]  Instead it complains of potential, forthcoming impacts it may experience as the result of a future EPA rulemaking.

Because of the nature of this case, which involves a determination of the health and environmental impacts of lead poisoning, NSSF's economic interests are so remote and attenuated that it lacks Article III standing and a "significantly protectable interest" necessary to support invention.  This case does not concern the economic impacts or technological considerations raised by NSSF, and the resolution of this case cannot and will not result in direct and immediate impacts to those interests.  NSSF has also failed to meet its burden to establish that its ability to protect its interests will be impaired or impeded, as it will be free to participate in any future rulemaking proceedings and challenge any final EPA rules in the Court of Appeals.  NSSF has also failed to demonstrate that the EPA will inadequately represent its interests.  Finally, the issues NSSF seeks to interject in this case will only delay litigation and result in prejudice to the original parties.  For these reasons, this Court should deny NSSF's motion to intervene. In the event this Court finds NSSF may intervene, Plaintiffs request this Court establish limitations to the scope of NSSF's intervention in the interest of judicial economy and fairness to the original parties.

## II.    TSCA PETITION BACKGROUND

TSCA mandates that the EPA regulate chemical substances where there is a "reasonable basis to conclude" that such substances "present an unreasonable risk of

---

[1] Plaintiffs acknowledge that in deciding whether the Court will order EPA to initiate a rulemaking, it will determine whether EPA has the authority to regulate lead shot and bullets.

injury to health and or the environment." 15 U.S.C. § 2605(a).  The EPA may, by rule,

regulate a chemical substance by prohibiting its manufacture, processing, or distribution

in commerce. *Id.* at § 2605(a)(1)(A).  Any person may petition the EPA to initiate a

rulemaking proceeding for a such a prohibition. *Id.* at § 2620(a).  In the event the EPA

denies a petition, the petitioner is entitled to have the petition considered by a district

court in a de novo proceeding. *Id.* at § 2620(b)(4)(B).  If the petitioner demonstrates by a

preponderance of the evidence that "there is a reasonable basis to conclude that the

issuance of such a rule or order is necessary to protect health or the environment against

an unreasonable risk of injury to health or the environment," the court shall order the

EPA to initiate a rulemaking. *Id.* at § 2620(b)(4)(B)(ii).

Plaintiffs petitioned the EPA to initiate a rulemaking prohibiting the manufacture,

processing, and distribution of lead shot, bullets, and fishing sinkers because these

chemical substances pose an unreasonable risk of injury to health and the environment.

The petition details the chronic and acute health effects from lead exposure on wildlife

and humans.  The petition explains that wildlife species are exposed to lead through

feeding in aquatic environments and ingesting contaminated vegetation and sediments,

feeding on invertebrates or vertebrates containing lead, and ingesting lead pellets or

fragments directly, mistaking them for food, grit, or bone.  The petition also describes the

ways in which humans are impacted, whether through accidently directly ingesting lead

fragments in meat tissue, from airborne lead that is created by friction from lead slugs

against gun barrels, or ingestion of lead residue after handling lead bullets.

Even though the EPA has already declared lead a toxic substance, *see* 15 U.S.C.

§§ 2581-2692 and 40 C.F.R. 716.21(a)(8), it now claims that it does not have the

authority to regulate lead shot and bullets, and that regulating lead fishing tackle is

unnecessary and not the least burdensome alternative to adequately protect health and the

environment.  However, the EPA does not appear to dispute the scientific evidence

contained in the petition that lead shot, bullets, and fishing sinkers pose an unreasonable

risk to health and the environment.

Therefore, Plaintiffs now seek a de novo review of the petition.  If this Court finds

that an EPA rule is necessary to protect health or the environment against an

unreasonable risk of injury from lead shot, bullets, or fishing sinkers, it can order the

EPA to initiate such a rulemaking.  In promulgating such a rule, the EPA would proceed

in accordance with the Administrative Procedure Act ("APA") § 553 which governs

rulemaking, and would allow interested persons to submit written data, views, and

arguments, and provide an opportunity for an informal hearing. 15 U.S.C. § 2605(c)(2).

The EPA would also then consider "the reasonably ascertainable economic consequences

of the rule, after consideration of the effect on the national economy, small business,

technological innovation, the environment, and public health." *Id.* at § 2605(c)(1)(D).

Upon issuance of an EPA final rule, any person, including NSSF, may file a petition for

judicial review of such a rule with the U.S. Court of Appeals. *Id.* at § 2618(a)(1)(A).

### III.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 24(a) and D.C. Circuit precedent instruct courts

to grant intervention as of right to applicants who demonstrate: (1) the timeliness of the

motion; (2) a protectable interest relating to the property or transaction which is the

subject of the action; (3) an impairment of the applicant's ability to protect that interest;

and (4) inadequate representation by the existing parties. *Fund for Animals v. Norton*, 322

F.3d 728, 731 (D.C. Cir. 2003).  In addition, in the D.C. Circuit, an applicant for

intervention as of right must establish Article III standing. *Id*. at 732.  In doing so, an

applicant must at minimum show (1) an injury-in-fact; (2) causation; and (3)

redressability. *Lujan v. Defenders of* Wildlife, 504 U.S. 555, 561 (1992).  Specifically,

the applicant must have suffered "harm that is concrete and actual or imminent, not

conjectural or hypothetical." *Environmental Defense v. Leavitt*, 329 F. Supp. 2d 55, 66

(D.D.C. 2004).  The absence of any one factor – in either the standing or FRCP 24(a)

determination – is fatal to the application for intervention as of right.

Furthermore, courts have discretion under FRCP 24(b) to allow permissive

intervention upon the applicant's timely motion showing (1) an independent grounds for

subject mater jurisdiction; and (2) a claim or defense with a common question of law or

fact with the main action. *Equal Emp't Opportunity Comm'n v. Nat'l Children's Ctr.*, 146

F.3d 1042, 1046 (D.C. Cir. 1998).  Courts must also consider whether the permissive

intervention will unduly delay or prejudice the original parties. *Id.* 1048; FRCP

24(b)(1)(B).

Finally, intervention "may be subject to appropriate conditions or restrictions

responsive among other things to the requirements of efficient conduct of the

proceedings." Advisory Committee Notes to the 1966 Amendments to the FRCP; *see

also* Wright, Miller & Kane, FEDERAL PRACTICE AND PROCEDURE, Vol. 7C, §

1913 at 391-92; *Smuck v. Hansen*, 408 F.2d 175, 180 (D.C. Cir. 1969)(holding the nature

of the applicant's interest "may play a role in determining the sort of intervention which

should be allowed.").  Therefore, a court granting intervention may limit the intervention

as appropriate.

## IV.   ARGUMENT

NSSF seeks to intervene as of right or permissively in all aspects of the case, despite its lack of objection to the Plaintiffs' underlying proposition that lead shot, bullets, and fishing sinkers pose an unreasonable risk of injury to health and the environment.  Moreover, NSSF fails to articulate a direct, imminent harm to a legally protectable interest, and it does not demonstrate that the EPA will provide inadequate representation.  NSSF's intervention in this case will only cause delay and prejudice the original parties by interjecting issues not relevant to the Court's consideration.  For these reasons, Plaintiffs ask that the Court deny intervention.  If, however, the Court finds intervention warranted, Plaintiffs ask the Court to limit NSSF's intervention to promote judicial economy and fairness to the original parties.

**A.     NSSF is Not Entitled to Intervention as of Right**

      1.     NSSF Does Not Have Standing to Participate in this Action

NSSF attempts to dispense with its requirement to demonstrate standing in a single footnote that claims that applicants seeking intervention on behalf of defendants are not required to demonstrate standing, and that nonetheless NSSF's alleged interests that are the grounds for its intervention are sufficient to demonstrate standing. Mot. to Intervene at 6, fn 3.  NSSF argues that it is not required to demonstrate standing, citing dicta from *Roeder v. Islamic Republic of Iran* that states that an inquiry into whether an applicant seeking to intervene as a defendant "runs into the doctrine that the standing inquiry is directed at those who invoke the court's jurisdiction." 333 F.3d 228, 233 (D.C. Cir. 2003), *cert denied* 542 U.S. 915 (2004).  Yet the D.C. Court of Appeals in *Roeder*, which found that the defendant-intervenor had standing to intervene, clearly did not hold

that applicants for intervention as defendants need not demonstrate standing. *Id.* at 233-34.  Furthermore, NSSF points to no case law overturning the D.C. Court of Appeals holding in *Southern Christian Leadership Conference v. Kelley*,747 F.2d 777 (D.C. Circuit 1984) that establishes that an applicant for intervention must have Article III standing.  In fact, subsequent D.C. Court of Appeals precedent reveals that standing must still be demonstrated by intervenor-defendant applicants. *See Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003); *Environmental Defense v. Leavitt*, 329 F.Supp.2d 55 (D.D.C. 2004).  Therefore, NSSF is required to show it has standing to intervene.

The interests alleged by NSSF in support of its application to intervene are not sufficient to confer Article III standing.  An applicant to intervene must demonstrate an injury in fact – that is particularized and concrete – as well as actual and imminent. *Lujan* at 561.  Between NSSF's motion and its Keane Declaration, NSSF's injuries are limited to the economic interests of its members, in both the cost of manufacturing lead-free ammunition and in the cost of purchasing lead-free ammunition.[2]  Specifically, NSSF complains that if the petitioned action were granted, ammunition manufacturers would be forced to redesign their products or retool or purchase new manufacturing equipment,[3]

---

[2] NSSF also claims that its members would be outcompeted by foreign ammunition manufacturers who would not be subject to an EPA rulemaking on lead shot and bullets. Mot. to Intervene at 8.  However, TSCA plainly gives the EPA the authority to regulate imports. *See* 15 U.S.C. § 2612(a)(1) "The Secretary of the Treasury shall refuse entry into the customs territory of the United States . . . of any chemical substance, mixture, or *article containing a chemical substance or mixture*" in violation of a rule or order under Section 6 of TSCA (emphasis added).

[3] NSSF neglects to mention that many of its manufacturer-members already manufacture lead-free ammunition, such as: Ammo Brothers; Barnes Bullets; Blackhills Ammunition; Cor-Bon Ammunition; D Dupleks Ltd.; Federal Cartridge Company; Hornady Mfg. Co.; International Cartridge Company; Magtech Ammunition Company; Norma Ammunition; Nosler, Inc.; Remington Arms Co., Inc.; Sinterfire, Inc.; Weatherby, Inc.; and Winchester Ammunition.

Opposition to Intervention                    7

and that ammunition consumers would be forced to pay more for lead-free ammunition than they current pay for lead ammunition.

First, NSSF has not shown it will suffer imminent, concrete injuries as a result of this litigation.  Its alleged prospective economic injuries are not the subject of this action.  In fact, any potential changes to the ammunition industry (which Plaintiffs do not concede) would result only from an administrative process subsequent to a finding by this Court that lead poses an unreasonable risk of injury to health and the environment.  Therefore, NSSF lacks the necessary injury-in-fact to satisfy standing.

Second, NSSF cannot point to an imminent, concrete injury that is causally related to the resolution of this action.  If Plaintiffs prevail and obtain all the relief they have requested, the Court would order the EPA to initiate a rulemaking proceeding.  This administrative process would afford NSSF an opportunity to participate in the rulemaking proceeding where it could raise its concerns about potential impacts to their members' interests.

For very similar reasons, NSSF is also unable to satisfy the redressability prong of standing.  The only question before this Court is whether there is a reasonable basis to conclude that the issuance of a rule prohibiting the manufacture, processing, or distribution of lead shot, bullets, and fishing sinkers is necessary to protect health or the environment against an unreasonable risk of injury.  If this Court determines there is a reasonable basis, it must then order the EPA to initiate a rulemaking proceeding; this Court does not itself have the authority to regulate lead.  Because NSSF's injuries do not arise from this litigation, this Court cannot redress NSSF's alleged injuries.  Therefore, because an outcome favorable to Plaintiffs in this case will not directly or immediately

injure NSSF's members, NSSF has failed to establish it has standing to intervene in this litigation.

       2.       <u>NSSF Does Not Have a Legally Protected Interest in this Action</u>

Intertwined with the standing analysis is FRCP 24(a)(2)'s requirement that an applicant demonstrate it has a legally protected interest for the purpose of intervention. *Jones v. Prince George's County*, 348 F.3d 1014, 1018-19 (D.C. Circuit 2003) (holding where an applicant "has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under *Rule 24(a)(2)*").  The D.C. Court of Appeals has further defined a legally protectable interest as one that is "of such a direct and immediate character that the intervenor will either gain or lose by the direct legal operation and effect of the judgment." *United States v. American Telephone and Telegraph* Company, 642 F.2d 1285, 1292 (D.C. Cir. 1980), *quoting Smith v. Gale*, 144 U.S. 509, 518 (1892).

NSSF cites four cases for the proposition that "[w]hen a third-party challenges an agency final action or other regulatory direction, the members of the regulated industry that are directly affected by that government action have a significant protectable interest that supports intervention." Mot. to Intervene at 7.[4]  However, NSSF's reliance on these cases is misplaced, as in each of the cases, the underlying challenge was to existing regulations or rules, and the intervenors were directly subject to the challenged rules.

---

[4] NSSF cites to *Fund for Animals v. Norton*, 322 F.3d 728 (D.C. Cir. 2003); *NRDC v. EPA*, 99 F.R.D. 607 (D.D.C. 1983); *Military Toxins Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998); and *Conservation Law Found. Of New England v. Mosbacher*, 966 F.2d 39 (1st Cir. 1992).

Plaintiffs do not challenge an EPA final rule in this litigation.[5]  Rather, Plaintiffs challenge the EPA's denial of their petition for a rulemaking.  The EPA's denial of Plaintiffs' petition placed no regulatory restrictions on NSSF, and the Court's review of the petition cannot not directly result in regulatory restrictions on NSSF.  As explained throughout this opposition, a favorable ruling by this Court will not immediately or directly impact NSSF's interests.  Therefore, NSSF cannot show that it will "lose" if this Court finds in Plaintiffs' favor.

      3.      Resolution of this Action will not Impair or Impede NSSF's Ability to Protect its Interests

Resolution of this action favorable to Plaintiffs will result only in an order from the Court that the EPA initiate a rulemaking.  This rulemaking procedure, governed by TSCA and Section 553 of the APA, requires the publication of the proposed rule in the Federal Register and an opportunity for interested persons to participate. 15 U.S.C. § 2605(c)(2), 5 U.S.C. § 553(b).  Participation can include the submittal of written data, views, and arguments, and participation in an informal hearing. 15 U.S.C. § 2605(c)(2). The required informal hearing would be robust, allowing interested persons an opportunity to present oral or written testimony, or both. *Id.* at § 2605(c)(2)(B).  In the event of disputed issues of material fact, interested persons are permitted to present rebuttals and conduct cross-examinations. *Id.* at § 2605(c)(3)(A).

Throughout this rulemaking process, the EPA considers "the reasonably ascertainable economic consequences of the rule, after consideration of the effect on the national economy, small business, technological innovation, the environment, and public

---

[5] The promulgation of a rule is only challengeable in the Courts of Appeal. 15 U.S.C. § 2618(a)(1)(A).

health." 15 U.S.C. § 2605(c)(1)(D).  NSSF will have the appropriate opportunity to

submit additional information, and have its purported interests considered.  The statute

provides ample opportunity for public involvement specifically to take into account the

technical and economic factors that appear to be at the heart of NSSF's interests.  Finally,

upon issuance of an EPA final rule, any person, including NSSF, may file a petition for

judicial review of such a rule with the U.S. Court of Appeals.

In *Alternative Research and Development Foundation v. Veneman*, the D.C. Court

of Appeals held that an applicant-intervenor's rights are not impaired by an initiation of a

rulemaking where the applicant-intervenor can participate in the rulemaking and

challenge a final rule. 262 F.3d 406 (D.C. Cir. 2001); *see also Environmental Defense v.*

*Leavitt* at 68 (holding the applicant-intervenor did not show an injury or impairment

sufficient to satisfy either standing or Rule 24(a)'s impairment-of-interest requirement

because it could participate in the rulemaking and challenge a final rule).  In *Veneman*,

plaintiffs petitioned the Secretary of Agriculture to amend the definition of "animal" to

remove the exclusion of birds, mice, and rats bred for use in research under the Animal

Welfare Act. *Veneman* at 406.  While the petition was still pending, plaintiffs filed a

complaint against the Secretary, and the parties then entered into a stipulation of

dismissal, stipulating the Secretary would grant the petition for rulemaking and initiate

and complete a rulemaking on the requested action. *Id.* at 407.  Applicant-intervenor, an

association engaged in research using birds, rats, and mice, sought intervention as of right

and, in the alternative, permissive intervention. *Id.*  The court held that applicant-

intervenor's interests were not impaired by the initiation of a rulemaking because it

would have an opportunity to have its opinions heard through the rulemaking process and it could challenge a potential final rule. *Id.* at 411.

Like the applicant-intervenor in *Veneman*, NSSF will have ample opportunities to have its interests considered though an EPA rulemaking proceeding and it will be free to challenge a final rule should EPA promulgate one. Therefore, resolution in this Court is but the first domino potentially setting into effect a chain of events that may eventually lead to impacts to NSSF's interests. However, nothing in a favorable resolution by this Court impairs or impedes NSSF's ability to protect its interests by participating in the rulemaking proceedings or by challenging a final rule in the Court of Appeals.

4. NSSF's Interests are Adequately Represented by Federal Defendants

NSSF also has not met its burden to show inadequate representation. Any interest NSSF may have in the present action is adequately represented by the EPA in this action. To the extent NSSF's narrow economic interests are different than the broad public interests of the federal government, NSSF has not met its burden to show that its interests will not be represented by the EPA.

In *Humane Society of the United States v. Clark*, hunting groups sought to join federal defendants through intervention in an action that challenged a decision to open several National Wildlife Refuges to hunting. 109 F.R.D. 518 (D.D.C. 1985). Applicant-intervenors argued that because federal defendants were "required by law to weigh and reconcile a number of competing interests in deciding whether and to what extent wildlife refuges should be open to sport hunting . . . [they would] not be able to argue for continued access to federal wildlife refuges with the same vigor as would the [applicant-intervenors]." *Id.* The court rejected this "balancing competing interests" argument and

found that in the context of the lawsuit, the federal defendants' only interest was in

upholding the regulations, not in weighing the competing interests of the public. *Id.* at

520.

Like the applicant-intervenors in *Humane Society*, NSSF here argues that because

the EPA is focused on the broad representation of the public interest, and because the

EPA is "not in a position to fully understand the impact of Plaintiffs' claims on the

ammunition market . . . or to advocate on behalf of the interests of NSSF's members," it

is not adequately represented by the EPA. Mot. to Intervene at 12.  However, like the

federal defendants in *Humane Society*, the EPA's only interest in the present litigation is

in upholding its decision that it does not have the authority to regulate lead shot and

bullets and that regulation of lead fishing sinkers is unnecessary.

To the extent NSSF has *any* interest in this litigation (as opposed to a future EPA

rulemaking action), this interest is identical to EPA's.  NSSF presents no evidence of

disagreement between the EPA and NSSF on the issue of EPA's authority to regulate

lead shot and bullets, nor does it allege any conflict of interest or collusion between the

present parties which may indicate that EPA is not willing to defend its position. *Humane*

*Society* at 520-21.  Therefore, because NSSF has failed to show that the EPA will not

adequately represent its interests, intervention should be denied.

**B.**     **NSSF Should be Denied Permissive Intervention**

NSSF's request for permissive intervention should also be denied because it has

not demonstrated it has a common question of law or fact with the main action, it has

failed to establish independent grounds for jurisdiction, and its participation will delay

and prejudice the resolution of this case.

Opposition to Intervention              13

Permissive intervention may be granted where the applicant has shown it has a

claim or defense that shares a common question of law or fact with the main action and

an independent grounds for subject matter jurisdiction. *EEOC* at 1046.  Even after the

applicant satisfies these requirements, the court "must consider whether the intervention

will unduly delay or prejudice that adjudication of the original parties' rights." FRCP

24(b)(1)(B).

Here, NSSF seeks to insert economic and technological factors that are not at

issue before this Court.  All that is at issue before this Court is whether there is a

reasonable basis to conclude that the issuance of a rule by the EPA is necessary to protect

health or the environment against an unreasonable risk of injury from lead shot, bullets,

and fishing sinkers.  NSSF does not appear to contest the risk of injury from lead, rather

it seeks to have this Court entertain its concerns about speculative impacts to its

economic interests that may come about as a result of a future rulemaking.  While TSCA

contemplates the consideration of such interests, it is in the context of a rulemaking

proceeding that occurs after the EPA has made an initial determination about the health

and environmental impacts of the chemical substance.  Therefore, NSSF will have an

opportunity to be heard if this Court orders the EPA to initiate a rulemaking proceeding.

That subsequent rulemaking proceeding is the appropriate forum for NSSF to advocate

for its interests, not the present litigation.

NSSF offers no common claim or defense with the main action.  While it does

allege that the EPA does not have the authority to regulate lead shot and bullets, that

defense is made on behalf of the EPA and is not a defense NSSF itself could raise as it is

not the federal agency accused of impermissibly denying the petition.  NSSF presently

Opposition to Intervention              14

has no independent grounds for subject matter jurisdiction as the statute only allows for

petitioners to challenge the denial of a petition in federal district court.  Finally, NSSF

only seeks to interject its concerns about prospective, speculative impacts to its interests.

Allowing the interjection of these issues at this stage of the proceedings is not only

contrary to the statute, it will unduly delay adjudication of this case and prejudice the

existing parties.

## C.      If Granted, Intervention Should be Limited

For the reasons stated above, Plaintiffs ask that the Court deny NSSF's motion to

intervene.  If the Court is inclined to find that NSSF should be granted intervention as of

right or permissive intervention, Plaintiffs request that such intervention be appropriately

limited so as to best to ensure the efficient conduct of the proceedings and to prevent this

litigation becoming a forum for extraneous policy debates.  This Court may limit the

participation of intervenors, and courts have done so in other cases. *See* Advisory

Committee Notes on Fed. Rule Civ. P. 24.

Plaintiffs ask the Court to impose restrictions should the Court grant either

intervention of right or permissive intervention to NSSF.  First, as NSSF seeks to

intervene in order to defend the EPA's interpretation of its lack of authority to regulate

lead shot and bullets, it should be restricted to participating in the portion of the litigation

that addresses the EPA's authority to regulate lead shot and bullets, and not be permitted

to participate in any other portion of the litigation.  Second, as this action has been

initiated by Plaintiffs, who bear the burden of proof in the de novo proceeding, NSSF

should be limited to filing one opposition brief during the briefing on the merits and not

permitted to file any cross-motion for summary judgment or additional reply briefs.

Finally, NSSF should not be permitted to engage in any discovery, except if granted leave of the Court.

## V. CONCLUSION

NSSF has failed to demonstrate that its legally protectable interests will be directly impacted by this litigation, that this litigation will impair or impede NSSF's ability to protect its interests, or that the EPA will not adequately represent its interests. Finally, NSSF's intervention in this case will only serve to delay the litigation process by adding extraneous issues.  For these reasons, Plaintiffs ask this Court to deny intervention.  Should this Court find intervention appropriate, Plaintiffs ask this Court to limit NSSF's intervention solely to the issue of whether EPA has the authority to regulate lead shot and bullets.

Respectfully submitted,


Dated: December 13, 2010                    /s/Jaclyn Lopez
                                            Jaclyn Lopez (*pro hac vice*, Cal. Bar No. 258589)
                                            Adam Keats (*pro hac vice,* Cal. Bar No. 191157)
                                            CENTER FOR BIOLOGICAL DIVERSITY
                                            351 California St., Suite 600
                                            San Francisco, CA 94104
                                            Telephone: 415-436-9682 x. 305
                                            Facsimile: 415-436-9683
                                            jlopez@biologicaldiversity.org
                                            akeats@biologicaldiversity.org

                                            William J. Snape, III (DC Bar No. 455266)
                                            CENTER FOR BIOLOGICAL DIVERSITY
                                            5268 Watson Street, NW
                                            Washington, DC 20016
                                            Telephone: 202-537-3458
                                            Telephone: 202-536-9351
                                            Facsimile: 415-436-9683
                                            billsnape@earthlink.net


Opposition to Intervention              16

**CERTIFICATE OF SERVICE**

I hereby certify that on December 13, 2010, I electronically filed the foregoing

CENTER FOR BIOLOGICAL DIVERSITY, PUBLIC EMPLOYEES FOR

ENVIRONMENTAL RESPONSIBILITY, AND PROJECT GUTPILE'S

MEMORANDUM IN OPPOSITION TO MOTION TO INTERVENE AS

DEFENDANTS OF NATIONAL SHOOTING SPORTS FOUNDATION with the Clerk

of Court using the CM/ECF system which will send notification of this filing to all

attorneys of record.


Dated: December 13, 2010          /s/Jaclyn Lopez
                                  Jaclyn Lopez (*pro hac vice*, Cal. Bar No. 258589)
                                  CENTER FOR BIOLOGICAL DIVERSITY
                                  351 California St., Suite 600
                                  San Francisco, CA 94104
                                  Telephone: 415-436-9682 x. 305
                                  Facsimile: 415-436-9683
                                  jlopez@biologicaldiversity.org