# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | ) ) ) | Case No. 10-2007 (EGS) |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | **REPLY IN SUPPORT OF MOTION TO INTERVENE OF NATIONAL SHOOTING SPORTS FOUNDATION** |
| | ) ) | |
| LISA P. JACKSON, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## INTRODUCTION

As demonstrated in its Motion to Intervene, there can be no real dispute that the National Shooting Sports Foundation, Inc. ("NSSF") has satisfied the requirements to intervene as of right, or alternatively, to intervene permissively.  Fed. R. Civ. P. 24(a)(2), (b)(1)(B).  The Center for Biological Diversity, Public Employees for Environmental Responsibility and Project Gutpile (collectively "Plaintiffs") objections to NSSF's intervention that it does not have standing or a protectable interest in this action, that resolution of the action will not impair or impede its interests, and that EPA will adequately represent its interests are entirely frivolous and without merit.

First, as the trade association to the firearms and ammunition industry, NSSF and its members have both Article III standing and a protectable interest in this action.  Plaintiffs argue that the United States Environmental Protection Agency ("EPA") must initiate a rulemaking under the Toxic Substances Control Act ("TSCA"), 15 U.S.C. §§ 2601 et seq., to prohibit the

manufacture, processing, and distribution of lead shot, bullets, and fishing sinkers.  *See* Pls.'

Compl. for Declaratory & Injun. Relief (Doc. No. 1 in Docket).  Plaintiffs acknowledge that "in

deciding whether the Court will order EPA to initiate a rulemaking, it will determine whether

EPA has the authority to regulate lead shot and bullets" and that the "underlying issue presently

before the Court [is] whether lead shot, bullets, and fishing sinkers present an unreasonable risk

of injury to health or the environment."  Pls.' Opp'n to Mot.to  Intervene at 1-2 & n.1 (Doc. No.

6 in Docket).  On these crucial issues, NSSF has a protectable interest in supporting EPA's

correct conclusion that ammunition is excluded from the Agency's TSCA jurisdiction and in

opposing Plaintiffs' incorrect assertions regarding the "unreasonable risk" of injury from lead

shot and bullets.[1]

  Second, resolution of this action in Plaintiffs' favor would certainly impair or impede

NSSF's ability to protect its members' interests.  Plaintiffs' demand that EPA use TSCA to ban

lead in shot and bullets threatens to shut down the domestic ammunition manufacturing industry

and potentially increase costs to the hunting and sports shooting public, while simultaneously

allowing foreign manufacturers to import that very same ammunition into the U.S. without

competition or TSCA regulation.

---

[1] Plaintiffs assert that "[n]otably, NSSF does not contest the underlying issue presently before the Court, whether lead shot, bullets, and fishing sinkers present an unreasonable risk of injury to health or the environment."  Doc. No. 6 at 1-2.  Plaintiffs' argument is entirely unsubstantiated and should be dismissed for several reasons.  First, it is not relevant to NSSF's motion to intervene.  Second,  because EPA determined that it lacked authority under TSCA to regulate lead shot and bullets, the Agency did not itself address Plaintiffs' contention that lead shot and bullets present an unreasonable risk of injury to health and the environment.  *See* 75 Fed. Reg. 58378 (September 24, 2010).  The Court likewise need not address this issue because ammunition is clearly excluded from EPA's TSCA jurisdiction. Third, the assertion is incorrect: NSSF does contest Plaintiffs' claims about unreasonable risk, which are not substantiated by evidence.  At the appropriate time, should this Court decide that this issue is relevant to this proceeding,  NSSF will dispute Plaintiffs' erroneous assertions regarding the alleged "unreasonable risk" of traditional ammunition.  At this procedural stage, however, it is unnecessary to substantively respond to these assertions.

Plaintiffs' claim that NSSF would not be harmed by a ruling in its favor because NSSF would be able to participate in any subsequent rulemaking is disingenuous. If this Court rules that EPA has the jurisdiction under TSCA to regulate traditional ammunition and that such regulation is necessary to prevent unreasonable risks to human health and the environment, Plaintiffs will be the first to argue that both of these findings will be binding in a subsequent rulemaking. Plaintiffs essentially seek to bar NSSF from protecting its interests in this litigation and, if it prevails in this litigation in NSSF's absence, would then argue in a subsequent rulemaking that these issues have been decided and cannot be addressed again in a subsequent rulemaking. NSSF's legal and economic interests would be impaired and impeded by having critical legal and factual issues regarding the regulatory status of traditional ammunition decided, without being provided the opportunity to present its views and relevant evidence.

Third, the federal government may not adequately represent NSSF's interests because EPA's broader, public interest in defending its conclusions in its denial of Plaintiffs' petition for rulemaking are distinct from NSSF's private interests. NSSF may be more likely than the government to advance arguments related to the specific interests of its members on both the jurisdictional issue as well as on the "underlying issue" identified by Plaintiffs—"whether lead shot, bullets, and fishing sinkers present an unreasonable risk of injury to health or the environment." Doc. 6 at n.1.

For these reasons, and for the reasons set forth in its Motion to Intervene filing, NSSF is entitled to intervene as of right. In the alternative, this Court should exercise its discretion and authorize NSSF's permissive intervention.

# ARGUMENT

## I.   NSSF Is Entitled to Intervene as of Right.

Contrary to Plaintiffs' assertions, NSSF is entitled to intervene as of right under Federal

Rule of Civil Procedure 24(a) because (A) it has demonstrated standing and a "protectable"

interest in the litigation; (B) as a practical matter, the disposition of this case may impair NSSF's

ability to protect its interests and the interests of its members; and (C) NSSF's interests are

inadequately represented by the existing parties to the litigation.[2]  *See, Fund for Animals, Inc. v.

Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

> ### A.   NSSF has a protectable interest in defending EPA's conclusion that EPA lacks
> authority under TSCA to regulate ammunition and in contesting Plaintiffs' assertion that lead
> shot and bullets "present an unreasonable risk of injury to health and or the environment," which
> are the subject matters of Plaintiffs' suit.

NSSF seeks to intervene in this case to support EPA's denial of Plaintiffs' petition, and

oppose Plaintiffs' attempt to force EPA to ban the use of lead in domestically manufactured

ammunition.  Plaintiffs' requested relief would result in the manufacture and distribution of

ammunition being regulated under TSCA, and the prohibition of the domestic manufacture of

traditional ammunition.  *See* Doc. 1 at ¶¶ 1, Request for Relief.   As the trade association for the

firearms and ammunition industry, NSSF and its members will be directly impacted by the

outcome of this litigation.  *See* Doc. No. 5 at 3-5, 7-9.

In its Motion to Intervene, NSSF demonstrated that it meets the Article III standing

requirements.  Doc. 5 at 5-6 n.3.  Further, as the D.C. Circuit has indicated, "the matter of

standing may be purely academic" with respect to motions to intervene because "any person who

---

[2] Plaintiffs do not contest (nor could they) the timeliness of NSSF's Motion to Intervene. *See* NSSF's  Mot. to Intervene at 6-7 (Doc. No. 5 in Docket).

satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003), *cert. denied,* 542 U.S. 915 (2004); *see also Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1076 (D.C. Cir.1998) (a party that satisfies the standing requirements also has a legally protected interest for purposes of Rule 24(a) intervention). NSSF's interests in this litigation are such that it meets both the requirements for intervention as of right, as well as the test of constitutional standing.

NSSF meets the three, well-established elements of Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). First, NSSF will suffer injury-in-fact if Plaintiffs succeed in obtaining the order they seek, requiring EPA to initiate a rulemaking to prohibit the manufacturer, processing, and distribution of traditional ammunition. Doc. 1 at ¶ 1. Plaintiffs are asking this Court to make two decisions: first, that EPA has authority to regulate ammunition under TSCA and second, that there is a reasonable basis to conclude that traditional ammunition presents an unreasonable risk of injury to health or the environment and thus order EPA to regulate traditional ammunition under TSCA. As set forth in NSSF's Motion to Intervene and accompanying Declaration (see Doc. 5), each of these conclusion would injure NSSF members, which have developed their businesses in reliance on TSCA's express exclusion of ammunition from regulation.[3]

---

[3] Plaintiffs' effort to downplay the potential injury to NSSF's members by saying that such injuries are "limited to the economic interests of its members" should be rejected. Doc. 6 at 7. First, NSSF's Motion to Intervene demonstrates that the legal as well as the economic interests of its members are implicated in this proceeding. NSSF has a protectable interest in defending EPA's conclusion that a key aspect of its members' business—the manufacturing, processing and distribution of traditional ammunition—is outside of EPA's TSCA jurisdiction. Moreover, NSSF has a protectable interest in any inquiry into whether traditional ammunition presents an "unreasonable risk" of injury. Second, a party may legitimately intervene even if its interests are "limited" to economic interests. The "threat of economic injury from the outcome of litigation undoubtedly gives a petitioner the requisite interest." *WildEarth Guardians v. USFS*, 573 F.3d 992, 996 (10th Cir. 2009)) (internal quotation marks and citations omitted); *see also U.S. v.*

Second, this injury is directly tied to the challenged action: should the Court decide that Plaintiffs' request for a ban of traditional ammunition is within EPA's jurisdiction and there is a reasonable basis for concluding that traditional ammunition poses an unreasonable risk, the entire regulatory landscape would change and, as discussed further below, such a change would have severe business consequences.[4]

Third, these injuries would be avoided (or redressed) by a Court decision that finds EPA properly concluded it lacks jurisdiction to regulate ammunition under TSCA. As such, Article III standing has been demonstrated.

While Plaintiffs attempt to distinguish case law cited in NSSF's Motion to Intervene and suggest that NSSF is not threatened with injury in this proceeding because "the underlying challenge [in those cases] was to existing regulations or rules" and not to a denial of a petition for a rulemaking, Doc. 6 at 9-10, this distinction is without meaning. Plaintiffs are challenging EPA's decision that it lacks authority to regulate traditional ammunition and NSSF represents the industry that is directly affected by that EPA decision; NSSF thus has a significant, protectable interest that supports intervention. The cases cited by NSSF are directly relevant. For example, *NRDC v. EPA* involved a challenge to "procedures pursuant to which EPA reached preliminary decisions that the intervenors' pesticide products merited continued registration. If plaintiffs

---

*Albert Inv. Co., Inc.*, 585 F.3d 1386, 1398 (10th Cir. 2009) ("An interest in preventing an economic injury is certainly sufficient for intervention as of right.").

[4] Plaintiffs claim in their opposition that EPA could regulate under TSCA the importation of traditional ammunition manufactured by foreign manufactures if the Plaintiffs prevail in this litigation and a subsequent rulemaking. Doc. 6 at 7 n.2. However, in their complaint, Plaintiffs themselves concede that finished ammunition (i.e., shells and cartridges) are subject to the Federal excise tax and thus are exempt from TSCA. Doc. 1, ¶ 25. Therefore, even under Plaintiffs' interpretation of TSCA, finished traditional ammunition would be exempt from TSCA regulation. Accordingly, domestic manufacturers would end up facing unfair foreign competition, American jobs would be lost, and traditional ammunition would continue to be sold in the U.S. Doc. 5, Keane Decl. ¶ 6

succeed[ed] in th[e] case, these regulatory decisions, which [we]re obviously in the intervenors' interests, [would] be set aside." 99 F.R.D. 607, 609 (D.D.C. 1983). The Court concluded that the intervenors thus had a "substantial and direct interest in the subject of this litigation." *Id.* Similarly, NSSF members obviously have an interest in the EPA's decision that their product (traditional ammunition) are not subject to regulation under TSCA and thus have a direct interest in the subject of this litigation.[5]

   *In Conservation Law Found. v. Mosbacher*, the court determined that "a regulated group has a sufficient interest to intervene as of right in a suit filed by public interest organizations seeking more extensive regulation by a federal agency." 966 F.2d 39, 41-44 (1st Cir. 1992). The court observed that the proposed intervenors—commercial fishermen—were quite content with the status quo and that the relief sought by the plaintiffs, a consent decree, "requires action by the Secretary that will change the situation—a development that the fishing groups do not favor." *Id.* at 43. The court emphasized that the proposed intervenors' interests "are not speculative simply because the explicit terms of the consent decree do not implement those changes, but merely begin the process through which they would come about." *Id.* Again, the relief that Plaintiffs seek would change the status quo and begin a process through which changes in regulation of NSSF members would likely come about. NSSF thus has a protectable interest in this action.[6]

---

[5] In *NRDC,* the Court noted that even if the preliminary decision at issue was set aside, EPA would be required to take additional steps before there would be a change in the registration of pesticides. *Id.* Nonetheless, the Court concluded that the intervenors' interests "would be practically impaired because they would have to start over again demonstrating to EPA the safety of their pesticide products." *Id.*

[6] Ironically, the injury that Plaintiffs themselves allege is not tied to EPA's jurisdictional basis for denying their petition, but is rather based on alleged harms to the environment from the presence of traditional ammunition. *See, e.g.,* No. 1 at ¶¶ 11-15. Thus, Plaintiffs' argument that

For these reasons, NSSF also has protectable interests in the litigation under Federal Rule of Civil Procedure 24(a)(2).[7] *See Fund for Animals*, 322 F.3d at 735 (the conclusion that a party "has constitutional standing is alone sufficient to establish that [they have] 'an interest relating to the property or transaction which is the subject of the action'").

   B.     The disposition of this case may impair or impede NSSF's ability to protect its interests and the interests of its members.

   To show impairment of interests for the purposes of Rule 24(a)(2), a proposed intervenor need show only that the disposition of an action "*may* as a practical matter," impair or impede the intervenor's ability to protect its interests in the subject of the action.  Fed. R. Civ. P. 24(a)(2) (emphasis added).  As explained above, because the relief sought by the Plaintiffs would have direct, immediate and harmful impact on NSSF's interests—both by subjecting its members' products to regulation under TSCA and affecting how its members do business—this element is satisfied.

   Plaintiffs argue that NSSF's interests are not impaired or impeded because "[r]esolution

---

"resolution of this case cannot and will not result in direct and immediate impacts to [NSSF's] interests" could just as easily be directed at Plaintiffs themselves, as there would be no specific changes to EPA regulations or the environment required by a ruling in their favor.  If the harm that Plaintiffs allegedly suffer from EPA's determination that it cannot regulate ammunition is sufficient to satisfy their injury-in-fact requirement, then surely NSSF can demonstrate injury-in-fact (and a protectable interest) from the potential reversal of that determination.

[7] In addition to the impact on NSSF members' legal and economic rights that would result from a decision in Plaintiffs' favor, NSSF members would also be adversely impacted by the substantial time and resources that they would need to spend on any rulemaking process, and not on other business priorities.  In addition, the possibility that a rulemaking would result in restrictions or an outright ban on traditional ammunition could curb demand for traditional ammunition (or shift it to importers) and cause substantial alteration to NSSF members' manufacturing and distribution practices, all at a substantial financial cost.  See, e.g., *County of San Miguel, Colo. v. MacDonald*. 244 F.R.D. 36 (D.D.C. 2007) (movant-intervenors demonstrated a threat of direct injury because they benefited from their existing unregulated status; the threat of greater regulation of their lands was a concrete injury and having to participate in a rulemaking would be difficult and burdensome).

of this action favorable to Plaintiffs will only result in an order from the Court that the EPA

initiate a rulemaking" and that NSSF will have the opportunity to participate and challenge any

such rulemaking.  Doc. 6 at 10-11.  Plaintiffs' argument is disingenuous: it is clear that they want

this Court to decide critical legal and factual issues that will be difficult, if not impossible, to

raise again in a subsequent rulemaking.

If this Court rules that EPA has the jurisdiction under TSCA to regulate traditional

ammunition, and that a TSCA rulemaking to regulate traditional ammunition is necessary to

prevent an "unreasonable risk," Plaintiffs would certainly argue in any subsequent EPA

rulemaking that both of these issues have been settled by this Court and cannot be raised again in

the rulemaking. A rulemaking would not afford NSSF a legitimate opportunity to contest EPA's

jurisdiction, as that question would have already been decided by this Court and EPA would

likely be unwilling to revisit it.  Further, if Plaintiffs prevail in their effort to have this Court

determine whether traditional ammunition must be regulated under TSCA in order to prevent an

"unreasonable risk," a series of factual determinations will have to be made that will be difficult

to re-visit in a subsequent EPA rulemaking.[8]

NSSF disagrees with Plaintiffs' assertion that the Court should address the "unreasonable

risk" issue in this litigation.[9]  However, should this Court decide to directly address the risk

---

[8] Plaintiffs state that the "underlying issue" in this litigation is "whether lead shot, bullets, and
fishing sinkers present an unreasonable risk of injury to health or the environment." Doc. 6 at 1-
2.  In both their Complaint and opposition to NSSF's motion to intervene, Plaintiffs are clear that
they are looking for this Court to make some initial determination about risk.  *E.g.* Doc. 1 at ¶¶
57-58; Doc. 6 at 1-2, 15.  Indeed, they expressly seek a Court decision ordering EPA engage in a
rulemaking based on a finding that it is necessary to protect health or environment against an
"unreasonable risk" of injury.  *E.g.* Doc. 1 at ¶ 57.

[9] Even if this Court were to conclude that EPA has jurisdiction to regulate ammunition under
TSCA, the analysis of whether traditional ammunition presents an "unreasonable risk" such that
a rulemaking is required should be conducted by EPA in the first instance.  *Cf. Environmental*

issue, NSSF's legal and economic interests would be directly implicated by such a determination and would not be adequately protected solely by participating in a subsequent rulemaking.

Plaintiffs' complaint sets forth the complex factual issues that is expects this Court to address:

> A) the effects of the chemical on health and the magnitude of human exposure;
> B) the effects of the chemical on the environment and the magnitude of environmental exposure;
> C) the benefits of the chemical for various uses and the ability of substances for such uses; and
> D) the reasonably ascertainable economic consequences of the rule, after consideration of the effect on the national economy, small business, technological innovation, the environment, and public health.

Doc. 1 at ¶ 20.[10]   These are factual issues of direct and vital interest to NSSF's members which would be directly impacted by any decisions by this Court.  Plaintiffs would be the first to assert, in any subsequent rulemaking, that determinations made by this Court on any of these issues would be binding on EPA, and that NSSF should be barred from raising them *de novo* in the rulemaking.  Therefore, excluding NSSF from this proceeding would significantly limit NSSF's ability to argue in any subsequent rulemaking that the manufacture of traditional ammunition does not pose an unreasonable risk.  Further, excluding NSSF would mean that this Court would be asked to make significant factual findings about traditional ammunition without one of the key stakeholders – the manufacturers and distributors of traditional ammunition – being involved in the process.  Accordingly, Plaintiffs' argument that NSSF's interests would be adequately

---

*Defense Fund, Inc. v. EPA*, 636 F.2d 1267, 1286 (D.C. Cir. 1980) (remanding record to EPA for further proceedings where court found the Agency's decision to exclude certain materials from regulation under TSCA was not supported by substantial evidence).  EPA denied Plaintiffs' petition solely on jurisdictional grounds well before the statutory 90-day period for consideration had run and before the public had an opportunity to fully comment on the factual allegations in Plaintiffs' petition.  EPA did not make any determinations or create a record regarding the facts alleged in Plaintiffs' petition.

[10] These are the criteria that EPA must consider in determining whether there is a "reasonable basis" for finding that regulation is necessary to prevent an "unreasonable risk." 15 U.S.C. § 2605(c)(1).

represented in a subsequent rulemaking, after this Court has made what could be binding

decisions about issues of direct import to the legal rights and economic interests of NSSF's

members, should be rejected.[11]

Plaintiffs' citation to *Alternative Research and Development Foundation v. Veneman*,

262 F.3d 406 (D.C. Cir. 2001) is inapposite.  Doc. 6 at 11-12.  In that case, the plaintiffs sued the

United States Department of Agriculture ("USDA") seeking an order to enjoin one aspect of a

final regulation.  The parties stipulated a dismissal, which provided that USDA would initiate a

rulemaking addressing the aspect of the regulation at issue.  *Id.* at 407.  The Court denied a

motion to intervene because it determined the movant's rights would not be impaired by the

initiation of the rulemaking.  *Id.* at 409.  The key distinction is that the resolution of the litigation

in *Veneman* did not change the regulatory status quo, whereas a ruling in Plaintiffs' favor in this

action would change the status quo by (1) declaring EPA has the authority to regulate an aspect

of NSSF's business over which EPA has not heretofore exercised jurisdiction and (2) possibly

concluding that such regulation is necessary because there is a reasonable basis to conclude that

traditional ammunition poses an unreasonable risk of injury.  Similarly, in *Environmental*

*Defense v. Leavitt*, the matter in which the movant sought to intervene did not address any of the

substantive EPA requirements at issue nor did it change the regulatory status quo.  329 F. Supp.

2d 55, 67-68 (D.D.C. 2004).

---

[11] Even if NSSF had some ability to re-litigate in a subsequent rulemaking decisions this Court might make, NSSF would still have protectable interests in this litigation.  *Cf., e.g., Sierra Club v. Ruckelshaus*, 602 F. Supp. 892, 896 (N.D. Cal. 1984) (citing *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 909 (D.C. Cir. 1977) (finding association's interests might be impaired even though the movant intervenor "is arguably more concerned with the content of the regulations, a matter not before this Court, than with when they are issued, and would have the opportunity to litigate the merits of the regulations at a later date").

Intervention of right is warranted where there is even a *possibility* that the remedies sought by Plaintiffs will harm the interests of NSSF's members, and thereby NSSF itself.  Given the likely and significant impacts of Plaintiffs' claims on NSSF's members, intervention of right is appropriate.

C.     NSSF's interests may not be adequately represented by EPA.

To demonstrate the final prong for intervention as of right, NSSF need only show that "representation of [its] interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (citation omitted).  This requirement is "not onerous." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986).

Contrary to Plaintiffs' contentions, EPA may not adequately represent NSSF's interests. EPA is a government agency and therefore it must have a broader focus than the specific and narrower interests of NSSF.  *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977).   The D.C. Circuit has "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals*, 322 F.3d at 736; *see also* Doc. 5 at 11-12 (citing additional cases concluding that an applicant's private interest, as distinct from the government's public interest, was sufficient to justify intervention).  As a governmental entity, EPA must avoid advancing the "narrower interest" of certain businesses "at the expense of its representation of the general public interest." *Dimond* 792 F.2d at 192-93.  Contrary to Plaintiffs' assertions, Doc. 6 at 13, NSSF need not show a disagreement between EPA and NSSF in order to justify NSSF's participation in the lawsuit. Here, "EPA does not oppose intervention, and the D.C. Circuit has repeatedly held that private companies can intervene on the side of the government, even if some

of their interests converge." *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (citation omitted).

Plaintiffs cite only one case in support of their contention that the government will adequately represent NSSF's interests: *Humane Society of the United States v. Clark*, 109 F.R.D. 518 (D.D.C. 1985).  Doc. 6 at 12-13.  In the context of that particular lawsuit, the Court held the movant-intervenors had not demonstrated an interest distinct from the federal government.  The court found "federal defendants' only interest [was] is in upholding the regulations" and not "properly weighing" how those regulations impacted the interests of private parties, *id.* at 520.  In contrast, Plaintiffs in this case have requested the Court review both the lawfulness of the agency's denial of its petition for rulemaking, which was on jurisdictional grounds, as well as substantive issues that EPA itself has not yet evaluated, namely the "unreasonable risk" inquiry.  This intensive, fact-bound analysis will clearly implicate the private interests of NSSF and its members that are distinct from the general public interests that EPA is charged with advancing in such an analysis.  The final requirement for intervention as of right is thus met.

Therefore, because all of the elements of Federal Rule of Civil Procedure 24(a) are satisfied, NSSF is entitled to intervene as of right.

## II.    In the Alternative, NSSF Should Be Granted Leave for Permissive Intervention.

"[O]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b).  Here, NSSF asserts a concrete interest in the issue presented by Plaintiffs' lawsuit: whether TSCA can be used to regulate the manufacture, distribution and use of ammunition.  NSSF seeks to offer defenses that directly relate to the questions of law and fact presented by

Plaintiffs' main action.  Plaintiffs claim that "[a]ll that is at issue before this Court is whether there is a reasonable basis to conclude that the issuance of a rule by the EPA is necessary to protect health or the environment against an unreasonable risk of injury from lead shot, bullets, and fishing sinkers."  Doc. 6 at 14.  NSSF has a strong interest in addressing these issues and, as the trade association to the firearms and ammunition industry, is uniquely positioned to do so.

Plaintiffs oddly suggest that NSSF's interests in the litigation are restricted to the jurisdictional issue and thus, if it is permitted to intervene, NSSF should be limited to addressing the jurisdictional issue.  While the jurisdictional issue is necessarily a threshold issue that NSSF has a critical interest in addressing, NSSF also has a critical interest in the substantive issues that Plaintiffs have requested this Court also address.  As noted above, *supra* note 9, NSSF does not agree with Plaintiffs' contention that the Court must reach these issues, even if it were to rule in Plaintiffs' favor on the jurisdictional issue.  Further, Plaintiffs are flatly incorrect that NSSF does not contest Plaintiffs' claims that traditional ammunition poses an "unreasonable risk" to health or the environment.  *See supra* note 1.  NSSF has an extremely strong interest in not only the jurisdictional issue, but in all other aspects of Plaintiffs' petition that this Court decides to review.  There is no basis for excluding NSSF from this Court's deliberations about the nature and risks associated with the traditional ammunition manufactured, distributed and used by NSSF's members.  Therefore, the restrictions that Plaintiffs request be placed on NSSF's intervention, if granted, are unwarranted.  *Id.* at 15-16.  NSSF should be granted full participation in this litigation.

## CONCLUSION

For the foregoing reasons and the reasons set forth in its Motion to Intervene, NSSF is entitled to intervene as of right.  NSSF has also demonstrated that it qualifies for permissive

intervention.  Therefore, NSSF respectfully requests leave to intervene in this matter, and to file

its own responsive pleading in support of EPA on or before the date on which the Government is

required to file a responsive pleading.

Dated: December 20, 2010                                    Respectfully submitted,


                                                           /s/ Roger R. Martella, Jr. _____
                                                           Roger R. Martella, Jr. (Bar No. 976771)
                                                           Christopher L. Bell (Bar No. 412857)
                                                           Ragu-Jara Gregg (Bar No. 495645)
                                                           SIDLEY AUSTIN LLP
                                                           1501 K Street, N.W.
                                                           Washington, D.C. 20005
                                                           (202) 736-8000
                                                           (202) 736-8711 (fax)

                                                           *Attorneys for Proposed Defendant-
                                                           Intervenors
                                                           NATIONAL SHOOTING SPORTS
                                                           FOUNDATION.*

                                                           *Of Counsel*
                                                           Lawrence G. Keane
                                                           General Counsel
                                                           National Shooting Sports Foundation
                                                           11 Mile Hill Road
                                                           Newtown, CT 06470-2359
                                                           (203) 426-1320

## CERTIFICATE OF SERVICE

I hereby certify that on December 20, 2010, I caused true and correct copies of the foregoing Reply in Support of Motion to Intervene of National Shooting Sports Foundation to be served on all counsel of record through the CM/ECF system, and by U.S. Mail, first class postage prepaid on the following:

Lisa P. Jackson, Administrator
U.S. Environmental Protection Agency
Ariel Rios Building (AR), 1101A
1200 Pennsylvania Avenue, NW
Washington, DC 20004

William J. Snape, III
Center For Biological Diversity
5268 Watson Street, NW
Washington, DC 20016

U.S. Environmental Protection Agency
Correspondence Control Unit
Office of General Counsel (2311)
1200 Pennsylvania Avenue, NW
Washington, DC 20460

Jaclyn Lopez
Adam Keats
Center For Biological Diversity
351 California St., Suite 600
San Francisco, CA 94104

Eric H. Holder, Jr.,
Attorney General
U. S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

/s/ Rachel D. Gray
Rachel D. Gray
SIDLEY AUSTIN LLP
1501 K Street, N.W.
Washington, D.C. 20005