**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

```
_____
                                 )
CENTER FOR BIOLOGICAL            )
DIVERSITY, et al.,               )
                                 )
            Plaintiffs,          )
                                 ) Civil Action No. 10-2007 (EGS)
        v.                       )
                                 )
LISA P. JACKSON, et al.,         )
                                 )
            Defendants.          )
_____)
```

**MEMORANDUM OPINION**

On August 3, 2010, plaintiffs Center for Biological Diversity, Public Employees for Environmental Responsibility, and Project Gutpile (collectively, "plaintiffs") submitted a petition ("Rulemaking Petition") to the United States Environmental Protection Agency ("EPA" or "Agency") seeking the regulation of lead shot, bullets, and fishing sinkers under the Toxic Substances Control Act, Pub. L. 94-469, 90 Stat. 2003 (1976) (codified at 15 U.S.C. §§ 2601-2692) ("TSCA" or the "Act").  The EPA determined that the Rulemaking Petition contained two discrete requests: one for the regulation of lead shot and bullets and a second for the regulation of lead fishing sinkers.  The EPA denied each of those requests in separate letters, sent to plaintiffs on August 27, 2010 and November 4, 2010.

Plaintiffs filed this action on November 23, 2010 against Lisa P. Jackson, the Administrator of the EPA, acting in her official capacity, as well as the Agency itself (collectively, "federal defendants"), challenging the denial of the Rulemaking Petition. The National Shooting Sports Foundation, Inc. ("NSSF"), the Association of Battery Recyclers, Inc. ("ABR"), and the National Rifle Association of America and Safari Club International (collectively, "NRA/SCI") were permitted to intervene as defendants.

Pending before the Court are the federal defendants' and intervenor-defendant NSSF's partial motions to dismiss the portion of this case related to lead shot and bullets. Defendants argue that plaintiffs' claim seeking an order compelling the EPA to conduct a rulemaking regarding the regulation of lead shot and bullets should be dismissed (1) for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, and (2) for failure to state a claim under Rule 12(b)(6). Upon consideration of the motions, the responses and the replies thereto, the applicable law, and for the reasons set forth below, the Court hereby **GRANTS** the partial motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). The Court therefore does not reach the analysis under Rule 12(b)(6) as to whether plaintiffs

have failed to make out a claim that the EPA has the authority to regulate lead shot and bullets.

**I.   BACKGROUND**

   **A.   Statutory Background**

Congress enacted TSCA in 1976 to prevent unreasonable risks of injury to human health or the environment associated with the manufacture, processing, distribution in commerce, use, or disposal of chemical substances and mixtures.  *See* 15 U.S.C. § 2601(a).  Specifically, under Section 2605 of TSCA, if the EPA finds that "the manufacture, processing, distribution in commerce, use, or disposal of a chemical substance or mixture, or that any combination of such activities, presents or will present an unreasonable risk of injury to health or the environment," the Agency "shall by rule apply one or more of [several listed regulatory requirements] to such substance or mixture to the extent necessary to protect adequately against such risk using the least burdensome requirements . . . ."  *Id.* § 2605(a).

TSCA defines the term "chemical substance" as "any organic or inorganic substance of a particular molecular identity, including (i) any combination of such substances occurring in whole or in part as a result of a chemical reaction or occurring in nature, and (ii) any element or uncombined radical."  *Id.* § 2602(2)(A).  However, the statutory definition of "chemical

substance" excludes from regulation, by reference to Section 4181 of the Internal Revenue Code, "pistols, revolvers . . . firearms (other than pistols and revolvers), shells, and cartridges." 26 U.S.C. § 4181; *see* 15 U.S.C. § 2602(2)(B)(v). The House Legislative Committee responsible for authoring TSCA explained:

> Although the language of the bill is clear on its face as to the exemption for pistols, revolvers, firearms, shells, and cartridges, the Committee wishes to emphasize that it does not intend that the legislation be used as a vehicle for gun control. Consequently the Administrator has no authority to regulate ammunition as an unreasonable risk *because it injures people when fired from a gun*. However, the Committee does not exclude from regulation under the bill chemical components of ammunition which could be hazardous because of their chemical properties.

H. Rep. No. 94-1341, at 10 (1976) (emphasis added).

Section 21 of TSCA, the Act's citizen petition provision, allows "[a]ny person [to] petition the Administrator to initiate a proceeding for the issuance . . . of a rule" under one of several different sections of TSCA. 15 U.S.C. § 2620(a). The petition must "set forth the facts which it is claimed establish that it is necessary to issue . . . a rule[.]" *Id.* § 2620(b)(1). The Administrator has 90 days after the filing of a rulemaking petition to "either grant or deny" the petition; if the Administrator denies the petition, the EPA must publish the reasons for its denial in the Federal Register. *Id.* § 2620(b)(3). If the Administrator "denies a petition . . . the

4

petitioner may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition." *Id.* § 2620(b)(4)(A). If a petitioner chooses to file a civil action, "[a]ny such action shall be filed within 60 days after the Administrator's denial of the petition[.]" *Id.*

**B.   Factual and Procedural Background**

On August 3, 2010, plaintiffs submitted the Rulemaking Petition, titled "Petition to the Environmental Protection Agency to Ban Lead Shot, Bullets and Fishing Sinkers Under the Toxic Substances Control Act." Federal Defs.' Mem. Ex. 1; *see also* Compl. ¶¶ 3, 45. According to plaintiffs, although the EPA has already declared that lead is a toxic substance and has implemented some regulations to reduce lead exposure, lead still remains widely encountered by wildlife and distributed in the environment from spent lead ammunition and lost lead fishing tackle. *See* Compl. ¶¶ 2, 24.

On August 27, 2010, the EPA sent a letter to plaintiffs indicating that it was "denying that portion of [plaintiffs'] petition" dealing with lead shot and bullets, explaining that "[a]fter careful review, EPA has determined that TSCA does not provide the Agency with authority to address lead shot and bullets . . . due to the exclusion found in TSCA § 3(2)(B)(v)." Federal Defs.' Mem. Ex. 2; *see also* Compl. ¶¶ 4, 50. On

September 24, 2010, the EPA published in the Federal Register its reasons for denying plaintiffs' request to regulate lead shot and bullets.  *See* Compl. ¶¶ 4, 52.  The EPA sent plaintiffs a second letter on November 4, 2010, stating that the Agency was denying plaintiffs' request to regulate fishing sinkers.  *Id.* ¶¶ 5, 53.  In that letter, the EPA explained to plaintiffs:

> EPA has completed its review of your August 3, 2010, petition requesting that the Agency take action under [TSCA] to prohibit the manufacture, processing, and distribution in commerce of lead shot, bullets, and fishing sinkers.  EPA denied your request concerning lead shot and bullets on August 27, 2010.  After careful review, EPA has determined you have not demonstrated that the remaining action requested in your petition -- a uniform national ban of lead for use in all fishing gear -- is necessary to protect against an unreasonable risk of injury to health or the environment, as required by TSCA section 21.  The petition also does not demonstrate that the action requested is the least burdensome alternative to adequately protect against the concerns[.]

Federal Defs.' Mem. Ex. 3.  On November 17, 2010, the EPA published in the Federal Register an explanation for its denial of the request to regulate lead fishing sinkers.  Compl. ¶¶ 6, 54.

Plaintiffs filed their complaint on November 23, 2010, seeking *de novo* review of a final decision by the EPA pursuant to 15 U.S.C. § 2620(b)(4)(B).  On February 8, 2011, the federal defendants and intervenor-defendant NSSF filed partial motions to dismiss regarding the request to regulate lead shot and

bullets.  The partial motions to dismiss are now ripe for review by the Court.

**II.  LEGAL STANDARDS**

    **A.  Standard of Review Under Rule 12(b)(1)**

Federal district courts are courts of limited jurisdiction, *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994), and a Rule 12(b)(1) motion for dismissal presents a threshold challenge to a court's jurisdiction, *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987).  On a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), the plaintiff bears the burden of establishing that the court has jurisdiction.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).  In evaluating such a motion, the Court must "accept as true all of the factual allegations contained in the complaint," *Wilson v. District of Columbia*, 269 F.R.D. 8, 11 (D.D.C. 2010) (citing *Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993)), and should review the complaint liberally while accepting all inferences favorable to the plaintiff, *see Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  Because subject matter jurisdiction focuses on the court's power to hear the claim, however, the court must give the plaintiff's factual allegations closer scrutiny when resolving a Rule 12(b)(1) motion than would be required for a Rule 12(b)(6) motion.

7

*Macharia v. United States*, 334 F.3d 61, 64 (D.C. Cir. 2003). Thus, to determine whether it has jurisdiction over a claim, the court may consider materials outside the pleadings where necessary to resolve disputed jurisdictional facts. *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992). Faced with motions to dismiss under Rule 12(b)(1) and Rule 12(b)(6), a court should first consider the Rule 12(b)(1) motion because "[o]nce a court 'determines that it lacks subject matter jurisdiction, it can proceed no further.'" *Sledge v. United States*, 723 F. Supp. 2d 87, 91 (D.D.C. 2010) (quoting *Simpkins v. Dist. of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997)).

### B. Review of an Agency's Statutory Interpretation

A challenge to an agency's construction of a statute that it administers is subject to the standard of review articulated in *Chevron U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984). In assessing the validity of an agency's interpretation of a statute, the court must first determine "whether Congress has directly spoken to the precise question at issue." *Id.* at 842. Courts "use 'traditional tools of statutory construction' to determine whether Congress has unambiguously expressed its intent," *Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1319 (D.C. Cir. 1998) (quoting *Chevron*, 467 U.S. at 843 n.9), including an examination of the statute's text, structure, purpose, and legislative history, *see Shays v. FEC*, 414 F.3d 76,

105 (D.C. Cir. 2005); *Bell Atl. Tel. Cos. v. FCC*, 131 F.3d 1044, 1047 (D.C. Cir. 1997). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue," *id.* at 843, the court "must next determine the deference, if any, [it] owe[s] the agency's interpretation of the statute," *Mount Royal Joint Venture v. Kempthorne*, 477 F.3d 745, 754 (D.C. Cir. 2007) (citing *United States v. Mead Corp.*, 533 U.S. 218 (2001)).

"If the agency enunciates its interpretation through notice-and-comment rule-making or formal adjudication, [courts] give the agency's interpretation *Chevron* deference." *Mount Royal Joint Venture*, 477 F.3d at 754. "[U]nder *Chevron*, courts are bound to uphold an agency interpretation as long as it is reasonable--regardless whether there may be other reasonable, or even more reasonable, views." *Serono Labs.*, 158 F.3d at 1321. "On the other hand, if the agency enunciates its interpretation through informal action that lacks the force of law, [courts] accept the agency's interpretation only if it is persuasive." *Mount Royal Joint Venture*, 477 F.3d at 754 (citing *Mead*, 533 U.S. at 235); *see also Christensen v. Harris County*, 529 U.S. 576, 587 (2000) (explaining that if *Chevron* deference is not

appropriate, courts may still accord an informal agency determination some deference under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); noting that *Skidmore* deference, however, is appropriate "only to the extent that those interpretations have the 'power to persuade'" (quoting *Skidmore*, 323 U.S. at 140)); *Power v. Barnhart*, 292 F.3d 781, 786 (D.C. Cir. 2002). The "power to persuade" is determined by the thoroughness evident in the agency's consideration, the validity of its reasoning, and its consistency with earlier pronouncements. *Skidmore*, 323 U.S. at 140. An agency's interpretation "may merit some deference whatever its form, given the specialized experience and broader investigations and information available to the agency, and given the value of uniformity in its administrative and judicial understandings of what a national law requires[.]" *Mead*, 533 U.S. at 234 (internal quotation marks and citations omitted).

## III. ANALYSIS

Defendants argue that plaintiffs failed to comply with the 60-day time limit set forth in Section 21 of TSCA, and this Court therefore lacks subject matter jurisdiction to entertain the portion of this suit related to lead shot and bullets. In particular, defendants claim that the EPA's first letter, dated August 27, 2010, which informed plaintiffs that the EPA was "denying that portion of [plaintiffs'] petition [related to lead shot and bullets]," but "reviewing the request in the petition

regarding lead fishing sinkers," *see* Federal Def.'s Mem. Ex. 2, was a formal letter of denial, triggering the statutory period of review, *see id.* at 5. Because the EPA issued this letter of denial 88 days before plaintiffs commenced their civil action, defendants argue that plaintiffs' claim with respect to lead shot and bullets should be dismissed for lack of subject matter jurisdiction.[1] *See* Federal Defs.' Mem. 5; Intervenor-Def.'s Mem. 1, 17.

According to defendants, here, the EPA "acted to sever Plaintiffs' two requests into two separate petitions" by issuing two letters of denial accompanied by two separate publications in the Federal Register. Intervenor-Def.'s Mem. 5, 15-16; *see*

---

[1] As this Circuit has held, time limits such as the one at issue here are considered jurisdictional. *See P & V Enters. v. U.S. Army Corps of Eng'rs*, 516 F.3d 1021, 1026 (D.C. Cir. 2008); *Chung v. U.S. Dep't of Justice*, 333 F.3d 273, 277 (D.C. Cir. 2003) ("[T]he question we ask [in determining whether a limitations period is non-jurisdictional], therefore, is . . . whether the injury to be redressed is of a type familiar to private litigation. . . . A petition for review of an informal agency rulemaking would not likely meet the test . . . ."); *see also W. Va. Highlands Conservancy v. Johnson*, 540 F. Supp. 2d 125, 140-43 (D.D.C. 2008) (holding limitations period for suit seeking to compel EPA action to be jurisdictional). Indeed, this Court previously has recognized that complying with the 60-day filing period in TSCA Section 21 is a jurisdictional prerequisite, stating that the "'statutory time limits for review of agency action are jurisdictional in nature,' and are therefore strictly construed." *Envtl. Def. Fund v. Thomas*, 657 F. Supp. 302, 306 (D.D.C 1987) (quoting *Eagle-Picher Indus., Inc. v. EPA*, 759 F.2d 905, 911 (D.C. Cir. 1985)). Therefore, the expiration of the 60-day time limit is an absolute bar to this Court's jurisdiction and cannot be subject to equitable exceptions, including equitable tolling. *See W. Va. Highlands Conservancy*, 540 F. Supp. 2d at 138.

*also* Federal-Defs.' Mem. 7. Defendants further argue that the EPA's interpretation of TSCA Section 21 merits deference. In response, plaintiffs contend that defendants' interpretation of the statute is inconsistent with the plain language of TSCA. According to plaintiffs, the statute's plain language makes clear that only the denial of a *petition*--and not the denial of a portion of a petition, or one among multiple requests contained in a petition--is actionable under Section 21. *See* Pls.' Opp 3-4.

**A.   The Plain Language of Section 21 of TSCA**

The Court's inquiry must begin with the plain language of TSCA Section 21. If the plain language speaks "to the precise question at issue" then "that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron*, 467 U.S. at 842-43.

Section 21 states, in relevant part:

> If the Administrator denies a petition filed under this section . . . the petitioner may commence a civil action in a district court of the United States to compel the Administrator to initiate a rulemaking proceeding as requested in the petition. Any such action shall be filed within 60 days after the Administrator's denial of the petition[.]

15 U.S.C. § 2620(b)(4)(A). At issue is the meaning of the term "petition" in the statute.

TSCA nowhere defines the term "petition," and neither party has pointed to anything in the legislative history or context of the statute that would clarify the meaning of the term. The word "petition" is defined as either: "(1) a formal written request made to an official person or organized body; (2) a document embodying such a formal written request; or (3) something asked or requested." Merriam-Webster's Collegiate Dictionary 869 (10th Ed. 1998). The EPA appears to have interpreted "petition" to mean "request," and thus, it treated the separate requests contained in plaintiffs' Rulemaking Petition as independent petitions. *See, e.g.*, Federal Defs.' Mem. 5, 7-8; *see id.* Ex. 3 ("EPA denied your request concerning lead shot and bullets on August 27, 2010. . . . EPA is denying your request for a national ban on lead in all fishing gear."). After denying each request, the EPA made separate publications in the Federal Register, as required by Section 21. *See Lead in Ammunition and Fishing Sinkers; Disposition of TSCA Section 21 Petition*, 75 Fed. Reg. 58,377 (Sept. 24, 2010); *Lead Fishing Sinkers; Disposition of TSCA Section 21 Petition*, 75 Fed. Reg. 70,246 (Nov. 17, 2010). Plaintiffs disagree with the EPA's interpretation of the plain meaning of Section 21, and seem to construe the term "petition" to only mean a formal document embodying a written request. *See* Pls.' Opp. 3-4.

Congress has not clarified whether the term "petition" in Section 21 means a formal document containing a request, or instead, a request contained therein.  Indeed, nothing in the plain language of Section 21 suggests that Congress contemplated the scenario that occurred here--the EPA's determination that a single document contained multiple, discrete requests that should be addressed separately.  In fact, nothing in the statute suggests that Congress even contemplated the scenario in which the EPA would find it necessary to grant in part and deny in part a rulemaking petition.  As defendants point out, plaintiffs' suggestion that Congress "intended that only the denial of the petition, and not the denial of a portion of a petition, be actionable," Pls.' Opp. 4, could potentially create an untenable situation for future petitioners.  *See* Federal Defs.' Reply Br. 3-4.  For example, if a future petitioner were to present two rulemaking requests in a single document, and the EPA denied the first request but later granted the remaining request, presumably the first denial would be the only denial that could trigger the 60-day time period to file a civil action under Section 21.  *See id.*  If the EPA granted the second request more than 60 days after denying the first, the petitioner would have no recourse.² The Court therefore

---

² Defendants argue that the only way to avoid the untenable result under plaintiffs' reading of the statute would

concludes that because the language of the statute leaves open multiple possible interpretations, the plain meaning of the text is ambiguous, and the Agency's interpretation merits deference under either *Chevron* or *Skidmore*.

**B.   The EPA's Interpretation of Section 21 of TSCA**

Because the EPA is charged with administering TSCA, and because the plain meaning of Section 21 is ambiguous, the Court must next "determine the deference, if any, [it] owe[s] the agency's interpretation of the statute." *Mount Royal Joint Venture*, 477 F.3d at 754.  However, defendants and intervenor-defendant differ on whether the Court should apply *Chevron* or *Skidmore* deference to the EPA's determination of how to treat multiple requests contained in one document. *Compare* Federal Defs.' Mem. 9 ("EPA's interpretation of how section 2620 applies to a petition document containing multiple rulemaking requests merits deference under *Skidmore*[.]"), *with* Intervenor-Def.'s Mem. 15 ("The court must defer to any permissible construction of a statute the agency is charged with administering, even if it is not the construction the court might have given the statute, unless Congress has 'directly addressed the precise

---

be to treat the disposition of the second request as the effective "denial" of the first request, even if the second request were *granted*.  See Federal Defs.' Reply Br. 4.  This would be directly contrary to the language of the statute, which states that a denial of a petition triggers the 60-day time period for filing under Section 21.  See 15 U.S.C. § 2620(b)(4)(A).

15

question at issue.'" (quoting *New Jersey v. EPA*, 517 F.3d 574, 581 (D.C. Cir. 2008)(citing *Chevron*, 467 U.S. at 842-43))). Even assuming, *arguendo*, that the Court must analyze the EPA's interpretation of Section 21 under the *Skidmore* standard, the Court accepts the Agency's interpretation here as persuasive.

Here, the EPA chose to address the requests contained in plaintiffs' Rulemaking Petition separately because, according to defendants, the products at issue, their use, and the relevant legal issues are different. *See* Intervenor-Def.'s Mem. 15; Federal Defs.' Mem. 7. Indeed, when the EPA denied the two separate requests, it did so on the basis of different considerations. The EPA's denial regarding lead shot and bullets relied upon the EPA's finding that it did not have legal authority to regulate shot and bullets under TSCA. *See* Federal Defs.' Mem. Ex. 2. The EPA later considered the request with respect to fishing sinkers and determined that the Rulemaking Petition had not shown that a ban on lead in fishing sinkers was "necessary to protect against an unreasonable risk of injury to health or the environment . . . [nor] that the action requested is the least burdensome alternative to adequately protect against the concerns[.]" *Id.* Ex. 3.

Under the *Skidmore* standard, the persuasiveness of an agency's interpretation is determined by the thoroughness in its consideration, the validity of its reasoning, and its

consistency with earlier pronouncements.  *Skidmore*, 323 U.S. at 140.  The Court finds that the EPA's actions here demonstrate that the EPA thoroughly considered how to address the requests contained in plaintiffs' Rulemaking Petition.  As discussed above, the EPA determined that it should separately address the two requests based on the different legal and factual considerations at issue.  In the letters dealing with each of the two requests, the EPA set forth its reasoning for each denial respectively.  *See* Federal Defs.' Mem. Ex. 2, Ex. 3.  Indeed, it made two separate publications in the Federal Register to clarify that it had denied the requests separately.  *See* 75 Fed. Reg. 58,377; 75 Fed. Reg. 70,246.  The EPA's actions demonstrate thorough consideration, and the Court is persuaded that the Agency's reasoning was valid.  Accordingly, the Court finds the EPA's interpretation of Section 21 of TSCA, and its actions here, persuasive.

Plaintiffs argue that, in the past, the EPA has always disposed of rulemaking petitions containing multiple requests at the same time, even if some of the requests were granted and others denied, thereby prompting only one filing deadline. Pls.' Opp. 5.  However, while the EPA's choice to sever the Rulemaking Petition--and address the requests contained therein

on separate occasions--may be novel,[3] the interpretation of TSCA Section 21 as requiring petitioners to file a civil action within 60 days of each denial is not inconsistent with the Agency's prior actions or pronouncements.

In addition to the deference afforded to the EPA under *Skidmore*, the Court also notes that an agency "enjoys broad discretion in determining how best to handle related, yet discrete, issues in terms of procedures and priorities." *Mobil Oil Exploration & Producing Southeast v. United Distrib. Cos.*, 498 U.S. 211, 230 (1991) (citing *Heckler v. Chaney*, 470 U.S. 821, 831-832 (1985); *Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.*, 435 U.S. 519 (1978)); *see also Tenn. Valley Mun. Gas Ass'n v. Fed. Energy Regulatory Comm'n*, 140 F.3d 1085, 1088 (D.C. Cir. 1998) ("An agency has broad discretion to determine when and how to hear and decide the matters that come

---

[3] While the Court is sympathetic to plaintiffs' contention that they are being penalized for the EPA's novel treatment of their petition, the plaintiffs were certainly on notice that the EPA had considered its denial of the first request formal by virtue of the publication of that first denial in the Federal Register, a step explicitly triggered in the statute by a denial of a petition. *See* 15 U.S.C. § 2620(b)(3). The Court therefore does not agree with plaintiffs that they were justified in awaiting the outcome of the petition as a whole by assuming that the proceeding was ongoing. In any event, if plaintiffs were unsure if the first letter constituted a denial, they could have timely filed a protective civil action. *See Eagle-Picher Indus.*, 759 F.2d at 914 ("As a general proposition . . . if there is *any* doubt about the ripeness of a claim, petitioners must bring their challenge in a timely fashion or risk being barred.").

before it."). The EPA has expertise in handling TSCA petitions, and the Court finds that it should defer to the Agency's determination of the most efficient way to address rulemaking documents containing multiple requests. *See, e.g.*, *Collins v. Nat'l Transp. Safety Bd.*, 351 F.3d 1246, 1253-54 (D.C. Cir. 2003) (upholding Coast Guard's interpretation of international regulations, based on the agency's "expertise . . . in deciding the most efficient way to administer its licensing and discipline procedures"); *Pharm. Research and Mfrs. of Am. v. Thompson*, 259 F. Supp. 2d 39, 71 (D.D.C. 2003) (finding that the Secretary of Health and Human Services' interpretation of a statutory scheme under Medicaid had persuasive force under the *Skidmore* framework, based upon the Secretary's "substantial expertise in administering [the statute]").

The Court therefore concludes that, because plaintiffs did not challenge the EPA's denial of their request to regulate lead shot and bullets within the 60-day time frame provided by TSCA, the Court does not have subject matter jurisdiction over the portion of this action related to lead shot and bullets. Because the Court lacks subject matter jurisdiction, it can proceed no further. The Court therefore does not reach the issue of whether the EPA possesses statutory authority to regulate lead shot and bullets under TSCA.

**IV. CONCLUSION**

Accordingly, defendants' partial motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) are hereby **GRANTED** and plaintiffs' claim with respect to lead shot and bullets is **DISMISSED**.  A separate Order accompanies this Memorandum Opinion.

**Signed:     EMMET G. SULLIVAN**
**             United States District Judge**
**             September 29, 2011**